# DALLAS TERM, 1900.

## CHARLES CARR V. THE STATE.

### No. 1966.   Decided January 10, 1900.

**1. Murder—Defense of Possession of Land—Evidence as to Subsequent Title Inadmissible, When.**

On a trial for murder originating in a controversy as to land, where it appeared that defendant had recovered possession and was placed in lawful possession, and was occupying the same under writ of restitution in a proceeding and judgment of forcible entry and detainer, at the time of the homicide, which occurred on the land, it was error to admit evidence to the effect that after defendant's recovery of possession by said action deceased brought a suit of trespass to try title for the land in the District Court; and that since his death said suit had been prosecuted to a successful issue by the wife of deceased and the land recovered, and that she and her children were living upon the land at the time of the trial. If defendant was in lawful possession at the time of the homicide (as was admitted by the prosecution), this was an end of that matter, although he may not have been the legal owner.

**2. Same—Construction of Statute.**

Under provisions of subdivision 2, article 680, Penal Code, a party who has the legal possession of property is authorized to defend that possession to the same extent as if he had the absolute legal right to the property.

**3. Defense of Property—Extent of Right of.**

A party, in defense of his possession to property, is only authorized to use such force as is necessary to protect his possession, and can only slay an intruder or trespasser after he has resorted to all other means except retreating; or where his life is put in danger or his person in danger of serious bodily injury in preserving his possession.

**4. Murder—Evidence—Facts Unknown to Defendant.**

On a trial for murder, it is not competent for the State to prove that deceased's gun was loaded with small shot, where it is not shown that defendant had knowledge of that fact.

**5. Same.**

On a trial for murder, occurring upon premises of which deceased had been dispossessed at law, and defendant placed in possession by an officer, the instructions given the defendant by the officer at the time he put him in possession were admissible in evidence. It was also admissible to show that after deceased was so dispossessed he had come back and taken possession of the premises.

APPEAL from the District Court of Wharton, on a change of venue from Fort Bend. Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of murder in the first degree; penalty, a life term imprisonment in the penitentiary.

The indictment charged appellant with the murder of S. L. Winston, in Fort Bend County, on the 30th day of December, 1897, by shooting him with a gun. On application of defendant, the venue was changed to the county of Wharton.

The opinion states the substance of the facts attendant upon the homicide, and also states all that is essential to an understanding of

the bills of exception in relation to the questions discussed regarding the admission of evidence of deceased's title to the land and its subsequent recovery at law, and occupancy as a home by the wife and children.

The State was allowed to prove, over objections of defendant, by the witness Coburne, that "the witness had come to the premises shortly after the homicide and saw the shotgun of the deceased lying on the jolt near the fence, and that witness unbreeched the gun and examined the contents of same, and that said gun was loaded with small shot—one shell about No. 6 and the other about No. 8." This testimony was objected to because it was not shown that the defendant had any knowledge at the time of the killing of the contents of the gun, and because said testimony was immaterial and incompetent and calculated to prejudice the rights of the defendant.

The defendant also saved an exception to the refusal of the court to allow him to prove, by the deputy sheriff W. B. Smith, who dispossessed the deceased of the premises on the day prior to the homicide, that he instructed the defendant as follows: "I told defendant when I left him in possession of the premises that he must hold them for himself now; that the sheriff had discharged his duty, and if deceased retook them, there could be no more writs to put him off. I also told defendant not to let deceased come back on the premises at all, for fear of trouble, and for fear he might attempt to retake them, and advised defendant if there had been anything belonging to deceased left on the premises, to let him send for it, but not to let deceased come on the premises at all." :

*Peareson & Wharton, I. N. & J. H. H. Dennis, R. M. Brown,* and *R. H. Woody,* for appellant.

*M. J. Hickey* and *Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life, and prosecutes this appeal.

· The homicide grew out of a dispute and litigation in regard to a tract of land. It appears that the land was a tract of 320 acres of school land belonging to the State, of which both defendant and deceased were seeking to obtain a patent by actual settlement. Defendant on the day· before the homicide had been placed in possession of the premises by virtue of a judgment in the County Court of Fort Bend County in a forcible entry and detainer suit, and a writ of possession issued on the same. On the trial it was admitted by the State that at the time of the killing the defendant was in legal possession of the premises on which deceased was killed, by virtue of said judgment. It further appears that when defendant was placed in possession he went upon the premises with his two brothers and a negro, all armed,

prepared to protect and defend his possession, and to prevent deceased from trespassing thereon or regaining possession. The officer who put defendant in possession removed the personal property of the deceased from the premises and outside of the inclosure surrounding the same. On the night after the defendant was placed in possession, Collins, a relative of deceased, came to the premises; and, according to his testimony, defendant told him to tell deceased that he could come there the next day and get his goods, and he would help him get them, and would treat him like a gentleman, but that he did not want him to run over him. This, according to his testimony, was related to deceased that night or the next morning. According to the defendant's testimony, however, appellant told Collins to tell deceased that he could send after his things and get them, but he did not want him to come on the place. On the next morning, however, near 12 o'clock, deceased, accompanied by Collins (a brother-in-law of deceased) and Abendroth, went with a wagon to the place, for deceased's goods. After they had partly loaded the wagon, according to all the testimony, deceased (Winston) and Abendroth went into the premises to a well, for the purpose of getting a drink of water. After they procured the water they remained at the well a short time, when appellant came to the back door, which was in view of the well, and ordered them off the premises. Abendroth immediately started out. Deceased, according to the State's testimony, remained sitting, and turned his head towards defendant and said something, which the witness did not understand; and immediately defendant fired upon him and killed him, one buckshot taking effect in his head. The State's witnesses testified that deceased made no hostile demonstration, but suggest that defendant shot deceased simply because he did not at once move out of the inclosure, in accordance with the command of defendant. On the other hand, defendant's evidence suggests the theory of self-defense. His witnesses show: That deceased and his companions were dilatory in loading the wagon. That they partly loaded it, and then took the team out of the wagon, placed a part of the goods under the wagon, and then arranged the side boards so as to form a complete barricade of the wagon. That the parties came there armed; one of them having a shotgun, and one or two pistols being in the party. That after they had arranged the wagon as above indicated, one of the parties changed his pistol from one pocket to another, and went to a shed near by. The other two came in the yard and sat down. That, when defendant came to the back door and told deceased and Abendroth to get off the premises, Abendroth started to move out, but deceased denounced defendant as a "damned son of a bitch," and then got behind a feed box and made a demonstration as if to draw a pistol. Will Carr, a brother of the defendant, came out of the front gallery about this time, and told his brother to shoot; and his brother fired, as he says, on account of the demonstration made at that time against him by deceased, as he believed from his movements that he intended to shoot him. Will Carr further testified that after

deceased fell, and the other parties were driven off by defendant, he went to the body of deceased, and there saw a pistol, on which his right hand rested. Defendant also proved threats made by deceased against him to take his life or keep possession of said property. It was further in evidence that a month or two previous to this the sheriff had dispossessed deceased of the property, but, before defendant moved in, deceased came back to the property and retook possession. This is a sufficient statement of the case to enable us to dispose of the questions presented in appellant's assignments.

There are eighteen bills of exception, all except three relating to the admission or rejection of testimony and these three relate to the argument of counsel made on such testimony as was admitted over appellant's objection. The bills of exception relating to the testimony admitted over appellant's objection are for the most part in regard to evidence offered by the State concerning deceased's title to the premises, and his right to the possession thereof. For instance, the State introduced testimony tending to show that deceased settled said premises prior to the settlement thereof by appellant, and lived thereon a year, and that he made improvements thereon, consisting of dwelling house and barn, fence, well, etc. The State further introduced evidence to the effect that, after the recovery by defendant in the forcible entry and detainer suit, deceased brought a suit in trespass to try title for the premises in the district court, and that since the death of deceased, said suit had been prosecuted to a successful issue by the wife of deceased, and the land recovered, and that she and her children were living on the land at the time of the trial. All this character of testimony was objected to by defendant on the ground that the State had admitted that at the time of the homicide he was in the legal possession of the premises, and the effect of said testimony was to controvert his right, and to make an issue before the jury, not as to the legal possession, but as to the rightful possession, of the premises, and that such suit was calculated to prejudice the jury against defendant. It occurs to us that the objections urged to this testimony by appellant are well taken. When the State admitted that defendant was in the legal possession of said premises, this was an end of the matter. Nor do we understand that by the introduction of this character of evidence it was the intention of the State to question the legality of appellant's possession. The purpose evidently was to show that, although he was in the legal possession, he was not in the rightful possession of the property. Our statute, it appears, has settled this question, and authorizes a party, when he has the legal possession of property, to defend that possession, though the right of the property may not be with him, to the same extent as if the absolute right of property were in him. Subdiv. 2, art. 680, Penal Code. And, in order to clinch this, the subsequent subdivision of said article states, "If possession be once lost, it is not lawful to regain it by such means as result in a homicide." In this case it seems the parties resorted to the courts. The right of possession by the judgment of the court

was settled in favor of the defendant. He was placed in possession, and he had a right to prevent an intrusion upon that possession. Of course, it is not to be understood that he had a right to slay anyone who might trespass upon his possession, or to slay one who refused to leave the premises on his command. He was only authorized to use such force as was necessary to protect his possession, and could only slay after he resorted to all other means, except retreating, to protect his possession against an intruder without avail; or he was authorized to slay to protect himself, if in preserving his possession his life was in danger, or his person was in danger of serious bodily injury. For a full discussion of this subject, see Sims v. State, 36 Texas Criminal Reports, 154. In this particular case we do not understand that appellant claims that he committed the homicide in order to protect his possession of the property in question against an intruder; but he does claim that he was apprehensive that deceased would endeavor to regain possession of the premises by force, and that when he came upon the premises he commanded him to leave, as he had a right to do, and that, instead of doing so, deceased made a hostile demonstration against him, which caused him to apprehend that his life was in danger, or he was in danger of serious personal injury, and on that account he shot and killed deceased. On the other hand, the State's theory was that deceased was not attempting by force to regain possession of the premises, but was simply removing his goods therefrom, and that he merely went upon the premises to get a drink of water, without having any ulterior purpose as to regaining possession, and that, on appellant's command to deceased to leave, because he did not immediately go, appellant slew deceased. Now, the simple proposition involved, so far as the land was concerned, is, who was in the legal possession of it? And all the testimony offered by the State concerning his right to the land was not only inadmissible, but was calculated to prejudice the jury against appellant. These observations apply with more force to the judicial proceeding, to show a recovery of the land by the representatives of deceased subsequent to the homicide. This testimony, in view of the very inflammatory arguments that were made on this line by the prosecution, was calculated to create in the minds of the jury a bitter prejudice against appellant; and this but intensified the error of the court in its admission, as after its admission it was entirely competent for counsel to make such use of it as they did, because the only purpose it could serve in the case was to show that, although appellant was in the legal possession of the premises, he had no right to this possession, and that consequently deceased had a greater right to be on the premises, and appellant accordingly had a less right to resist his intrusion on said premises. We would not be understood as holding that there is no testimony in the case sufficient to sustain the verdict. That is not the question. The testimony admitted was of an illegal character, and we are not prepared to say how much such testimony may have affected the jury. When we examine the charge of the court, which is

an admirable presentation of the law of the case on the question of self-defense, in connection with appellant's right of possession, which is assumed in the charge, it becomes more remarkable why the court admitted this character of testimony. The charge nowhere treats of it, but, as stated, assumes appellant's right of possession, and his right to protect his possession against the intrusion of deceased, and to use all reasonable and necessary force for that purpose. Said testimony is nowhere treated by the court, but stands out as purely extraneous matter, and well calculated, as stated before, to limit the defendant's right of self-defense in regard to the protection of his legal possession of the premises in question.

We do not think is was competent for the State to show that the gun of deceased was loaded with small shot, as appellant was not shown to have any knowledge of this fact.

In our opinion, the testimony concerning the instructions given by the sheriff to defendant when he placed him in possession was relevant and admissible. We also believe it was admissible to show that deceased had been previously dispossessed of the premises, and had, after the sheriff put him out, came back and taken possession thereof.

There are a number of assignments of error, but what we have said sufficiently covers all of them. On another trial the issue as to the possession should simply be confined as to who had the legal possession of the premises at the time of the homicide. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*