## J. M. PRYSE v. THE STATE.

No. 4135.    Decided November 18, 1908.

**1.—Murder—Evidence—Bill of Exceptions—Defendant as a Witness.**

Where upon appeal from a conviction of felony the record showed by the explanations of the trial court that the defendant had not in fact excepted to any rulings of the court with reference to the admission of testimony to prove defendant's failure to testify on examining trial, the same could not be considered; although had a proper exception been made at the time to such testimony the same would have been inadmissible.

**2.—Same—Evidence—Contradicting Testimony.**

Where upon trial for murder illegal testimony was introduced with reference to defendant's failure to testify in the examining trial but no exception was made thereto, and the defendant offered to use this illegal testimony as a basis for introducing testimony to contradict it, there was no error in refusing to permit him to do so.

**3.—Same—Charge of Court—Murder—Manslaughter.**

Where the defendant was convicted of manslaughter, he could not complain of the court's charges on murder in the first and second degree.

**4.—Same—Manslaughter—Self-Defense—Charge of Court.**

Upon trial for murder where defendant's evidence showed that the deceased grabbed at defendant's pocket book and attempted to strike him with a knife when defendant shot and killed him, the court erred in his charge on this evidence that if defendant attempted to retain possession of his property and killed the deceased in order to do so, he would be guilty of manslaughter. The defendant had the right under this evidence to act in self-defense and to kill the deceased to protect his person and property if necessary.

**5.—Same—Charge of Court—Manslaughter.**

Where upon trial for murder there was evidence that the deceased made an attack upon the defendant with a knife to rob him, the defendant had the right if his person became in danger of death or serious bodily injury to kill the deceased; but if defendant had no apprehension that the deceased was going to rob him and became angered, etc., rendering his mind incapable of cool reflection and he killed deceased he would be guilty of manslaughter.

**6.—Same—Charge of Court—Words and Phrases.**

Upon trial for murder where the defense was robbery, self-defense and manslaughter there was no error in the court's charge that if the jury acquitted the defendant altogether they would find the defendant not guilty. The word "altogether" was superfluous.

Appeal from the District Court of Potter. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Crudgington* and *Reeder, Graham & Williams,* for Appellant.— On question of court's charge on manslaughter: Ross v. State, 10 Texas Crim. App., 445; Hallowel v. State, 28 S. W. Rep., 468.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of court's charge on manslaughter and self-defense: Weaver v. State, 19 Texas Crim. App., 547; Pond v. State, 8 Mich., 150; Wharton on Criminal Law, secs. 463, 468.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

The evidence shows that appellant walked into a saloon in Amarillo and remained there the greater part of the day drinking. Appellant finally proposed to treat all in the house, among others, the deceased, who was a Mexican. After the parties took a drink, the appellant, having expressed a desire to go off on the train, was informed that he had but ten minutes to reach the train. Appellant replied: "I want to talk to this party awhile," and he and the deceased started back and went into a little room at the back part of the saloon building, and in about a minute the shooting occurred. Appellant then walked

out of the saloon without making a remark. The Mexican was found dead, and the justice of the peace who examined him found two small penknives in his pocket closed up, a pencil, and a piece of paper. Appellant testified that deceased got hold of him and jerked him into this little room. That he had a pocketbook with two ten dollar bills in it in his hand; that deceased grabbed at it, and had hold of it, and also had a knife in his hand, and he, thinking deceased was trying to rob him, shot and killed him. There were no eyewitnesses to the transaction save and except appellant and deceased.

Bill of exceptions No. 1 shows that while appellant was testifying in his own behalf, State's counsel asked him the following questions: "Q. You didn't tell it when you came out of the room did you? A. No, sir. Q. That the Mexican was trying to rob you? A. No, sir. Q. Nor you didn't tell it in the examining trial? A. No, sir. Q. You didn't tell either that he was trying to rob you or that he had a knife? A. No, sir. Q. You didn't tell anybody to search for it? A. No, sir." Thereupon defendant's counsel made the following statement: "I believe we can explain these things in our argument." To counsel's statement the court replied: "He has a right to ask him these questions." To which ruling of the court defendant's counsel then and there in open court excepted. Thereafter, and while the State's counsel was making his closing argument to the jury in this case, he referred to certain matters in his argument that the defendant's counsel thought not proper; whereupon the defendant's counsel objected thereto, addressing his remarks, in part, to the State's counsel, upon which the State's counsel appealed to the court to prevent the defendant's counsel from interrupting him. The court requested defendant's counsel not to interrupt the State's counsel in his argument. Whereupon State's counsel told the jury that the defendant's story as told upon the witness stand was not reasonable wherein he told that he killed the Mexican in defense of his property and person, believing the same necessary at that time, for the reason that the defendant had not on his examining trial held in this case or elsewhere told before he testified from the stand in this trial that the Mexican was trying to rob him and drew a knife on him for that purpose, and that he killed the Mexican to prevent him from robbing him or taking his life, believing at the time it was necessary. That under the instructions of the court to defendant's counsel he did not interrupt the State's counsel by making an objection to this argument, but now presents bill of exceptions No. 1 covering the matters contained in this bill, and insists that under the circumstances the matters herein detailed were prejudicial to the rights of the defendant, and that defendant should have the benefits thereof, the same having been called to the court's attention in defendant's motion for a new trial. This bill is explained by the court as follows: "As to the first paragraph of the bill, and the various questions and answers therein

set out, I have to say: These questions were propounded by the district attorney on his cross-examination of the defendant, while defendant was on the stand testifying in his own behalf. The defendant's counsel casually looked up at the court and remarked in substance: 'I believe we can explain these things in our argument,' and the court replied in substance: 'He had the right to ask him the questions,' and I understood that to be all there was in it; in fact, I did not understand at the time that there was really any objection to the questions and answers above mentioned.

"As to the second paragraph of the bill, the court explains: While the district attorney was making his closing argument to the jury one of defendant's counsel interrupted him several times, not as objections, but more as corrections of statement, which the district attorney was making as to what the testimony was. After several of these interruptions were made, the district attorney grew impatient and appealed to the court for protection against further interruption by defendant's counsel. Thereupon, the court kindly but firmly directed defendant's counsel not to interrupt the district attorney again except upon permission of the court, which direction was respectfully heeded by the counsel, and no further interruptions were made nor was there any request for permission to interrupt, and no exception was taken to the remarks of the district attorney; in fact, the court heard no complaint until same was made in the motion for a new trial." Clearly, under the explanation of the court appellant has no bill of exceptions, since same shows he did not except. If a proper exception had been made to this testimony, it would not have been admissible to prove appellant's failure to testify on examining trial. McDaniel v. State, 46 Texas Crim. Rep., 560; 81 S. W., 301; Wallace v. State, 46 Texas Crim. Rep., 341; 81 S. W., 966; Wilkins v. State, 33 Texas Crim. Rep., 320; 26 S. W., 409; Richardson v. State, 33 Texas Crim. Rep., 518; 27 S. W., 139; Doors v. State, 40 S. W., 311.

Bill of exceptions No. 2 shows that after appellant stated he did not testify to certain facts on his examining trial, appellant's counsel sought to prove by him when and where he first made complaint to any person of his money being missing and what he said about it at that time. State's counsel objected because the matter sought to be elicited was self-serving and could not be said to be cross-examination of what the State had brought out. The objection was sustained by the court. If permitted to answer, the appellant would have proven by his own testimony that within 10 or 15 minutes after he shot the Mexican, and immediately on reaching the jail, his person was searched by one C. J. Huskey, deputy sheriff, and certain articles on his person taken therefrom; that he then and there discovered that his pocketbook which had contained two ten dollar bills was not on his person and that he, defendant, at that time informed said deputy sheriff that he had said pocketbook contain-

ing said bills in his hand at the time he entered the room in the
saloon with the Mexican, and that immediately on entering the
room the Mexican at that time drew a knife and attempted to use
it on the defendant in his effort to take said pocketbook, and
that the defendant, under these circumstances, shot and killed the
Mexican; believing it necessary to protect his property and his life,
and for no other purpose, and further that he had not seen the
pocketbook or the money since he, defendant, and the Mexican
were struggling over it in the saloon. Before approving this bill of
exceptions the court makes the following explanation: "The testi-
mony sought to be elicited by the question set out in this bill was
not res gestae but was self-serving declarations, pure and simple,
because the witness showed by his own evidence that after he killed
the Mexican in a room with no one present but themselves, he, de-
fendant, walked out into the bar room where he silently waited
some time for an officer to come, and then, after the officer came
and made a cursory examination of the killing and walked out of
the saloon in charge of defendant, traveled several blocks to the
county jail and there, after he had been searched by the officer,
the defendant claims to have mentioned, for the first time, that his
pocketbook and money were missing. No offer was made to prove
that defendant made any request of the officer or any one else to
go to the place of the killing and search for the missing articles,
although the defendant testified in substance that the pocketbook
was dropped while in the struggle with deceased. The undisputed
testimony showed that the Mexican was instantly killed; that the
room, in which the killing occurred, was immediately closed and
kept closed until the justice of the peace arrived to hold an inquest
over the body of the deceased, and no one entered the room until
the justice and his assistants entered it, which appeared from the
testimony to have been something like an hour after the killing."
It will be seen from the explanation of the court that the testimony
is not res gestae, since appellant remained about the saloon before
making this statement; and furthermore, did not make same until
he reached the jail with the officer. The court does not say how
long this was, but the circumstances related in the explanation show
it must have been something like a half hour or an hour. At any
rate, we are not informed how long it was. Appellant in his bill
says about fifteen minutes, but the court does not approve this state-
ment, and hence to that extent appellant has no bill. But as we
understand the explanation, it shows that many things intervened
before the statement was made, and much time also elapsed before
said statement was made. Furthermore, the testimony would not
be admissible on the theory, as appellant insists, to contradict the
inference that the district attorney drew from the failure of the
appellant to testify in the examining trial, since said testimony

was not legal testimony, defendant having failed to testify in the examining trial. If proper exception had been made, and the court had not sustained it, it would have been reversible error to have proved said fact. Therefore, when illegal testimony is introduced, it does not afford a basis for introducing testimony to contradict.

Bill of exceptions No. 3 shows that appellant attempted to prove by C. J. Huskey the same facts in reference to the statement of appellant at the jail above discussed.

We find in the motion for a new trial that appellant insists that the court erred as contained in various other bills of exception, but we have discussed all the bills of exception we find in this record.

The 13th ground of the motion for a new trial complains that the court erred in charging on murder in the first degree. The 14th ground of the motion complains that the court erred in charging on murder in the second degree. Neither of these objections are tenable in view of the fact that appellant was convicted of manslaughter.

The 15th ground of the motion for a new trial complains that the court erred in charging on manslaughter.

The 16th ground of the motion complains that the charge is contradictory and misleading in that, among other things, the court informed the jury in substance that any person who killed another to prevent a forcible taking from him and his possession of his property under a belief that it was necessary so to do to protect his said property, would be guilty of manslaughter. After telling the jury that an attempt to forcibly take money or other personal effect from a person would be adequate cause in law, and would, if not otherwise justifiable reduce a homicide to manslaughter, the court proceeds and gives the following charge: "Now, if you believe from the evidence beyond a reasonable doubt, that the defendant with a deadly weapon, under the immediate influence of sudden passion aroused by adequate cause, as the same has been hereinbefore explained and not in defense of himself against an unlawful attack reasonably producing a rational fear or expectation of robbery, death or serious bodily injury, with intent to kill, did in the county of Potter, and State of Texas, on or about the 14th day of December, 1907, as alleged shoot and thereby kill said Joe M. Yborra, as charged in the indictment, you will find the defendant guilty of manslaughter and assess his punishment at confinement in the penitentiary for not less than two nor more than five years." This charge is erroneous. According to appellant's evidence, he had his pocketbook in his hand and deceased grabbed it and attempted to strike him with a knife when appellant shot and killed deceased. Under the law of this State appellant had a right to use whatever force was necessary to protect his property, and if in protecting his property, his life became in danger or his person of serious bodily

injury, he had a right to act upon such appearance of danger and slay the deceased, but as we understand this charge, the court tells the jury that if appellant attempted to retain possession of his property, and killed the deceased in order to do so, he would be guilty of manslaughter. This is not the law. Appellant had a right to his property; he had a right to its exclusive possession, and under the law of this State, he had a right, as stated, to use all the force necessary to protect his property, and in doing so, if his life or person became in danger of death or serious bodily injury, he would have a right to kill to protect his person and maintain his possession of his property. This question was very thoroughly discussed by us in the following cases: McGlothlin v. State, 53 S. W. Rep., 869; Hopkins v. State, 53 S. W. Rep., 619; Sims v. State, 36 Texas Crim. Rep., 154, and Woodring v. State, 33 Texas Crim. Rep., 26, and various other authorities of this court. The court, perhaps, had in mind in giving the above charge, this proposition: If the defendant had no apprehension of the Mexican taking his money, or fear thereof, and became angered at the fact that the Mexican attempted to take it, and laboring under passion, which rendered his mind incapable of cool reflection, he shot and killed the Mexican, then he would be guilty of manslaughter. In other words, he did not have a right to kill the Mexican because he barely attempted to get his property. If the facts rendered his mind incapable of cool reflection, and the jury thought same was adequate cause to produce such passion, it might be manslaughter. If the jury did not think it was adequate cause, it would be murder in the second degree.

Appellant complains of the following charge of the court: "If you acquit the defendant altogether, the form of your verdict will be: 'We, the jury, find the defendant not guilty.'" Appellant insists that said charge required at the hands of the jury in effect that they acquit the defendant of any wrong whatever before they could find him not guilty. We think this objection is not well taken. We see no occasion to use the word "altogether." If the jury acquitted appellant, he is altogether acquitted, and the word is superfluous.

For the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*