## Louis Walker v. The State.

### No. 2378. Decided April 16, 1913.

**1.—Murder—Charge of Court—Defense of Property.**

See opinion for evidence which is held to be insufficient to involve the defense of property, and the court did, therefore, not err in not charging thereon. Davidson, Presiding Judge, dissenting.

**2.—Same—Charge of Court—Manslaughter—Provocation—Insulting Conduct to Female Relative.**

Where, upon trial of murder, the evidence showed that there was insulting language towards female relatives of the defendant by the deceased at the time of the difficulty, and that deceased had also used insulting remarks prior to said difficulty, which had been communicated to defendant, and that the homicide occurred upon the first meeting of the parties, both causes should have been included in the charge of the court, and a charge of the court on manslaughter limiting the provocation of insulting conduct to the time of the difficulty was reversible error.

**3.—Same—Charge of Court—Defensive Theory.**

Where, upon trial of murder, the conduct of the deceased as shown by the evidence with reference to the manner of his approaching defendant with a view of making him leave the premises was such as, viewed from defendant's standpoint, as to have required a charge on this phase of the case, the same should have been submitted to the jury.

**4.—Same—Insulting Language and Conduct of 'Deceased not Communicated—Evidence.**

Upon trial of murder, where insulting conduct and language by the deceased used with reference to defendant's wife and sister-in-law had been communicated to defendant, it was error not to have admitted in evidence other \remarks by deceased of a similar nature, which were not communicated to the defendant, as the latter were corroborative of the first and would tend to throw light upon the action of deceased at the time of the difficulty.

**5.—Same—Evidence—Age of Female.**

Where, upon trial of murder, the evidence showed that the deceased had used insulting language concerning defendant's wife and his sister-in-law, who was of tender age, the defendant should have been permitted to prove that the age of said sister-in-law was fourteen years, and that she was not likely to have been a prostitute as claimed by the remarks of deceased.

**6.—Same—Charge of Court—Self-defense—Threats.**

Where, upon trial of murder, the court's charge on self-defense viewed in the light of threats was not as full and pertinent as it should have been under the facts, defendant's requested charges on this subject supplying these defects should have been given.

**7.—Same—Transcript—Practice on Appeal.**

Transcripts are required to be made up and filed in this court at once upon the adjournment of the trial court, and trial courts will take notice and see that the records are promptly prepared and filed in this court.

Appeal from the District Court of Navarro. Tried below before the Hon. H. B. Davis.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Richard Mays* and *Callicutt & Call,* for appellant.—On question of defense of property: Sims v. State, 36 Texas Crim. Rep., 154, and cases cited in opinion.

On question of adequate cause and provocation in the court's charge on manslaughter: Venters v. State, 47 Texas Crim. Rep., 280; McAnear v. State, 43 id., 519; Freeman v. State, 46 id., 318; Redman v. State, 52 id., 519; Holcomb v. State, 54 id., 486; Stewart v. State, 52 id., 273; Pryse v. State, 54 Texas Crim. Rep., 523, 113 S. W. Rep., 938; Akin v. State, 56 Texas Crim. Rep., 324, 119 S. W. Rep., 863; Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432; Orman v. State, 24 Texas Crim. App., 496; Ledbetter v. State, 26 id., 22; Richardson v. State, 28 id., 216; Hammond v. State, 28 id., 413.

On court's charge on self-defense and threats: Bradley v. State, 60 Texas Crim. Rep., 398, 132 S. W. Rep., 482; Carden v. State, 59 Texas Crim. Rep., 501, 129 S. W. Rep., 362.

On question of uncommunicated insults: Fossett v. State, 41 Texas Crim. Rep., 400; Hill v. State, 52 id., 241; Halcomb v. State, 54 Texas Crim. Rep., 486; Messer v. State, 43 id., 97; Hammond v. State, 28 Texas Crim. App., 413; Pits v. State, 29 id., 374; Akin v. State, 56 Texas Crim. Rep., 324, 119 S. W. Rep., 863; Jones v. State, 71 S. W. Rep., 962; Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432; Swain v. State, 48 Texas Crim. Rep., 98.

*C. E. Lane,* Assistant Attorney-General, and *L. A. Johnson,* for the State.—On question of defense of property: Tolliver v. State, 53 Texas Crim. Rep., 329, 111 S. W. Rep., 655.

DAVIDSON, PRESIDING JUDGE.—The record is very voluminous; a great number of questions are presented by bills of exception and motion for new trial relating to charges given and refused, and testimony admitted and rejected. The conviction resulted in murder in the second degree with five years punishment.

The court refused to charge the jury with reference to the defense of property. He gave a charge with reference to self-defense as well as self-defense viewed from the standpoint of threats and demonstrations to execute the threats. Deceased had rented land from George B. Walker, father of appellant. The rental contract was verbal, but with the understanding that the pecan crop on trees growing on the land was reserved by Walker with the right to gather the pecans. A small barn on the premises was also reserved as well as a small potato patch. The reason given for reserving the pecan crop was, first, Mr. Walker wanted the pecans himself, and, second, he did not want anybody threshing the trees because they would injure the trees so they would die, as some of the trees had previously died from this cause. He also reserved the right to operate the property for mineral purposes, drilling well and pumping them after being drilled, laying pipe and guy derricks. This was to carry out a contract with the Smith-Kerr Oil Company. That part of the contract relating to the oil matter covered digging wells and laying pipe, and erecting derricks, etc. When the pecans began to ripen there is evidence showing that deceased threshed one or more of the trees, whereupon the elder Walker employed appellant to gather the pecans with authority to employ hands to assist. The next day appellant and Hargraves went to where the trees were and began gathering the pecans. Appellant carried his gun with him. Deceased was at the time picking cotton with some of his children and hands five or six hundred yards away. When appellant began gathering the pecans the deceased approached him and an angry conversation occurred. Appellant testified when he first saw the deceased and his daughter southwest of his house—appellant and deceased living not far apart—the daughter was going in a fast walk towards the house and deceased was approaching appellant. When deceased reached a gap and came down the lane opposite where appellant was threshing pecans at about forty yards distant, deceased called Hargraves, who was assisting appellant in threshing the pecans, and said, "Hargraves, if you don't want to get in serious trouble you just stand aside." Hargraves went to where appellant was and said, "Louis, you had better look out." Hargraves then got his hat and got off to one side. About the time that Hargraves told appellant to look out, using the language above quoted, appellant told deceased he was not gathering pecans for himself. Deceased said to him he did not care, they were his pecans, and he had to let them alone. Quoting, then appellant said: "I told him he had been threshing pecans and we wanted to thresh some for our own use. He said it was a damn lie. I replied, 'It is just only a day or two ago that my wife stood in our front door and saw you threshing that tree where the ladder is.' He said, 'She did not see me doing any such thing.' I said, 'That's mighty hard to take,' and he replied, 'You will have to take that or worse, you black greasy son-of-a-bitch,' and when he made that remark he threw his hands around to his hip pocket and turned this way. I took a step and got my gun and fired as quick as

I could, and when I fired the first shot he turned in this position and was working at his. pocket with both hands, and I fired the second time." Without going into further detail as to what occurred at the time, the contention of appellant was that the language and acts raised, first, manslaughter; second, self-defense from apparent danger; third, self-defense viewed in the light of threats, and, fourth, the right to defend property. The court did not charge upon the defense of property. He gave a charge, however, on self-defense as well as self-defense viewed in the light of threats and demonstrations to draw a pistol. In view of what was said at the time, that appellant would have to get off the premises and not gather the pecans, viewed in the light of demonstration, acts and words, we are of the opinion the law of defense of property was involved in the case, and charge presenting that question should have been given to the jury. Sims v. State, 36 Texas Crim. Rep., 154; Sims v. State, 38 Texas Crim. Rep., 637; Revised Penal Code, arts. 1107, 1109, 1110; Woodring v. State, 34 Texas Crim. Rep., 419; Carr v. State, 41 Texas Crim. Rep., 380; Pryse v. State, 54 Texas Crim. Rep., 523, 113 S. W. Rep., 938; Weaver v. State, 46 Texas Crim. Rep., 607, 76 S. W. Rep., 564. The majority does not hold that defense of property is presented by the facts. The writer does.

The court in his charge on manslaughter limited the provocation of insulting conduct to the time of the difficulty. This was error under the facts. There had been previous insulting remarks of a very coarse nature uttered by deceased about defendant's wife, and her sister, who was living with the defendant and his wife at the time, spoken of in the testimony as a "little girl." Some of these insulting remarks and accusations of prostitution had been conveyed to appellant, and the testimony shows this was the first meeting after being informed of some of the insulting remarks. Wherever there is insulting conduct or words at the time of the difficulty, and there are also prior insulting remarks which had been conveyed to the accused, and the killing happened upon the first meeting, both causes should be included in the charge. A defendant is entitled to a charge in reference to previous insulting remarks or conduct that had been communicated upon the first meeting with. the party who uttered the insulting language or did the insulting acts, or was guilty of the insulting conduct, and the charge is error which fails to properly so instruct the jury. This is so under all the authorities. In this connection it is well enough here to say that the conduct of the deceased was such at the time, viewed from the defendant's standpoint, to have required also a charge on manslaughter from the standpoint of his acts and conduct with reference to the manner of approaching appellant with a view of making him leave the premises. There had been threats uttered by deceased which had been communicated to the appellant. Manslaughter, we think, under the facts, should have been charged from that standpoint, viewed in the light of the facts attending the conduct of deceased when he approached appellant.

Another question is suggested for reversal. In addition to the insult-

ing conduct and language used with reference to appellant's wife and sister-in-law, which had been communicated, there was offered testimony showing that other remarks of a similar nature which were not communicated. The language was of a grossly insulting nature in which he referred to appellant's wife and sister-in-law as being prostitutes and whores. These were offered by the defendant, but upon objection by the State same were not permitted to go to the jury. This was error. This question was discussed in a very recent case of Davis v. State. These were corroborative of the testimony which showed communicated insults and conduct and would strongly tend .to strengthen the belief that the communicated threats were uttered by the deceased. Uncommunicated insults are not admitted upon the theory that it would reduce to manslaughter or afford an adequate cause, but as corroborative of that which was communicated, and as also tending to show that deceased made the remarks that were communicated. It would also tend to throw light upon the action of the deceased at the time of the meeting at the pecan tree. It would tend to show deceased would more probably do as appellant contended he did when he approached appellant. There had been a previous difficulty between the parties, and threats made by the deceased, some of which were communicated and perhaps some not communicated to appellant. It is unnecessary to discuss this matter further. This character of testimony was admissible.

The insulting language was used by the deceased in regard to the sister-in-law of appellant, who was an inmate of his house. Some of the witnesses spoke of her as a little girl. The appellant proposed, in this connection, to prove her age to be 14 years. This was rejected. While we do not think this of very grave importance, still he would have a right to show her age, thus lessening the probability that a child of that age would be a prostitute, and especially within the knowledge, connivance and cognizance of his wife, the girl's married sister, and who was coupled with the sister-in-law as being a prostitute. She was under the protection of appellant and his wife, and it was insulting conduct of a very serious nature to accuse a man's wife not only of being herself a prostitute, but of permitting and conniving at the prostitution of her young sister only 14 years of age. Upon another trial if this testimony is offered it should be permitted to go to the jury.

There are quite a lot of exceptions to the charge on self-defense and refusal to give requested instructions both as to self-defense proper as well as self-defense viewed in the light of threats. We are of opinion, without discussing those questions, that the court's charge was not as full or pertinent as it should have been, and did not as fully and fairly present those matters as they should have been presented. Appellant's charges undertook to supply these defects. Upon another trial the court will understand, without going into a discussion of those matters, that the charge should be fully and fairly presented, covering all these questions of self-defense as well as manslaughter hereinbefore discussed as called for by the evidence.

This case was tried November 22, 1911, and the record filed in this court February 14, 1913. Why this delay in filing the transcript here is not explained, nor sought to be explained. We have called attention to this character of delay several times. This court will feel called upon to exercise its authority in matters of this kind. Transcripts are required to be made up and filed in this court at once upon adjournment of the trial court. Trial courts will take notice and see that records are forwarded at once and the clerk must be prompt in preparing and filing records.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*