## Tom Porch v. The State.

No. 3312.   Decided October 10, 1906.

**1.—Murder in First Degree—Bill of Exceptions—Evidence.**

Where upon appeal from a conviction of murder, the bill of exceptions with reference to statements made by a State's witness shortly after the killing which was objected to as hearsay, did not state the reason of the objection, the same could not be reviewed.

**2.—Same—Animus—Bill of Exceptions—Cross-Examination—Limiting Testimony.**

Where upon an appeal from a conviction of murder, in his bill of exceptions the defendant objected to certain answers of a State's witness on cross-examination as not germane to his direct examination, but the judge did not certify to these matters, but in his explanation stated that he eliminated the consideration of the same by the jury, except as showing the interest or animus of the witness, there was no error.

**3.—Same—Secondary Evidence—Harmless Error—Motive.**

Upon a trial for murder, where the State introduced a complaint against defendant for theft of a hog and also a bond in connection therewith to show motive of appellant to commit the offense of murder, the deceased having made such complaint; and also introduced testimony of the contents of said complaint and bond after making search therefor, there being no controversy about such complaint, there was no error, even if the predicate for the introduction of secondary evidence had been insufficient.

**4.—Same—Evidence—Foot Prints—Comparison of Tracks.**

Upon a trial for murder, there was no error to permit the State to introduce testimony of tracks, or footprints made by some person, and found on the ground coming to and going from the place of the homicide, the point where the .party who did the shooting was supposed to have stood; and that these tracks appeared to witness to be the same tracks, that is, made by the same person both coming and going; especially where the record showed that these tracks were measured as also the shoes of defendant, and they were found to coincide. Distinguishing Gill v. State, 36 Texas Crim, Rep., 595; Weaver v. State, 46 Texas Crim. Rep., 617; Grant v. State, 1 Texas Ct. Rep., 103; Mosely v. State, 4 Texas Ct. Rep., 435; Parker v. State, 80 S. W. Rep., 1008.

**5.—Same—Imputing Crime to Another—Motive.**

Upon a trial for murder, there was no error in excluding testimony to show the details of an altercation between deceased and a third party, which occurred sometime before the homicide, to show motive on the part of said third party to have committed the homicide; it being explained by the court that said third party stated that he was not in the neighborhood where the killing occurred on the night of the homicide, and was seven miles away.   Besides there was no testimony showing opportunity on the part of such third party to have committed the offense; motive alone was not sufficient.

**6.—Same—Argument of Counsel—Discussing the Record.**

Upon a trial for murder, where the evidence showed that defendant had been charged by deceased by complaint made before a justice of the peace of theft of a hog, there was no error in the State counsel's reference to such evidence; nor to the fact that defendant had not introduced his father as a witness who was under the rule during the trial.

**7.—Same—Circumstantial Evidence—Charge of Court.**

Where upon trial for murder the court charged upon circumstantial evidence, and that it required the facts on which the State relied for a conviction to be proved by competent evidence beyond a reasonable doubt, and that the same should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and that they must produce in the mind of the jury a reasonable and moral certainty that accused and no other person committed the offense charged, the same, although not as full as usually given, was sufficient.

**8.—Alibi—Charge of Court—Responsive to Evidence.**

Upon a trial for murder, where the defense was an alibi and the court gave a general charge on the subject of alibi, and also a charge that if defendant was at a certain place in evidence and was not present at the place of the homicide, etc., to acquit him, there was no error.

**9.—Same—Charge of Court—Declarations by Deceased.**

Upon trial for murder, where the evidence showed that deceased had charged defendant with theft of a hog, and the court charged that the jury could not consider this testimony as bearing on the question of defendant's guilt, the same was more favorable to defendant than he was entitled to. The same applies to the question of threats, which was not controverted.

**10.—Same—Evidence—Corpus Delicti—Identification.**

Where upon a trial for murder, the testimony left no issue concerning the death of the deceased by violence inflicted by some person other than himself, the same was sufficient of the corpus delicti. See opinion for sufficient testimony to identify defendant as the party who committed the homicide.

Appeal from the District Court of Mason; tried below before the Hon. Clarence Martin.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Flack & Dalrymple, Moursund & Moursund,* for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the first degree, and his punishment fixed at confinement in the penitentiary for life; hence this appeal.

The inculpating evidence is of a circumstantial character, and is to the effect that appellant and deceased were at the time of the alleged homicide neighbors. Appellant was living in the little village of Loyal Valley, and was engaged with his father in keeping a store. His father lived at one end of the village and he at the other end, some three hundred or four hundred yards apart, and both on or near the Mason and Llano road, which ran through the village. The store was situated on the side of the village nearer appellant's house,

some one hundred yards therefrom. Lehmann's house, with whom deceased (Tim Nard) lived, was situated about one hundred yards north or northwest of the store and on the same side of the road. Lehmann's family consisted of himself, his wife, and perhaps some small children; and deceased had been living with them several months. On the day preceding the night of the homicide, Lehmann is shown to have left his home for the town of Llano, some twenty miles distant; and was expected to be gone until the next day, of which trip appellant is shown to have had knowledge. Some months before the homicide, the evidence for the State shows that deceased caught appellant stealing a hog belonging to Lehmann. This occurred during the last of November, 1904. Some time subsequent to this deceased made an affidavit before justice of the peace against appellant, charging him with the theft of the hog, and then an examining trial was had, and appellant held to bail in the sum of $350. Some time in January shortly before the homicide Lehmann and deceased drove up to the store of the Porches, Lehmann got out, went into the store, and left deceased in the wagon. When he came out deceased was gone. It transpired that appellant saw him there and cursed and abused him; deceased cursed him; appellant left, went to his house, and got his pistol. In the meantime deceased left. Appellant is shown to have remarked, if deceased had been there when he got back he would have killed him. After supper on the night of January 23 (when the homicide occurred), appellant is shown to have gone to the house of Vineyard, who lived up the road toward Mason and beyond the store and Lehmann's, about half-way between Tom Porch's and his father, S. R. Porch. The evidence shows that the shooting which caused the death of deceased occurred shortly after appellant left Vineyard's on his return. Appellant's testimony shows that he went to Vineyard's in order to dress a cancer on Vineyard's wife. This is disputed by the State's evidence. The State also in this connection introduced testimony tending to show that appellant and his wife were to go that night to S. R. Porch's to engage in a game of dominoes. This is in accordance with the testimony of Viola Moseley, who stated in effect that appellant told her to go on up there, and that he and his wife would come after awhile, and bring her back. The State also introduced evidence concerning tracks at the place of the homicide. The homicide occurred between 7 and 8 o'clock at the house of Wm. Lehmann. Deceased had just left Mrs. Lehmann's room to go to his own room, which adjoined the dining room, and in the north part of the house. While deceased was disrobing preparatory to going to bed, he was shot from the north window of the house, near which was a cistern. The party who did the shooting is shown to have stood near this cistern, and fired through the window. The killing was done with a shotgun, and the wound which caused the death struck deceased's head, and some of the shot struck the walls of the room and some of the wads were found in the

room. Appellant relied on the failure of the State to establish his identity as the party doing the shooting, and he supported this by proof on his part of an alibi at the time of the shooting. This is a sufficient statement of the facts in order to discuss the bills of exception.

By appellant's first bill of exceptions he questions the action of the court permitting the State to prove by Mrs. Lehmann that immediately after the shooting, she left her home and went to the residence of Wm. Vineyard, some one hundred and fifty or two hundred yards distant. She was then asked to state whether she asked said Vineyard to do anything; and if so what? Appellant objected to this question, for the reason that any conversation between her and the said Vineyard, not in the presence of the defendant, was inadmissible against him, and was hearsay: This was overruled and witness permitted to testify in answer to said question, that she asked Vineyard to go up to S. R. Porch's (father of appellant) and get him to bring help, and to telephone to H. B. Gibbs (sheriff of Mason County) to come down. It is said in the bill that the answer of the witness was objected to, but no reason is stated. So we cannot review this matter.

In connection with this same matter appellant reserved a bill of exceptions to the testimony of Wm. Vineyard, which is presented, as follows: "I am uncle of defendant, Tom Porch. I now live at Cherry Springs, in Gillespie County. At the time of the killing of Tim Nard, I lived in Loyal Valley, about one hundred and fifty yards from Lehmann's residence, where Nard was killed. On that night my wife was very sick, with a cancer. She was pretty bad off. Between sundown and dark on the evening of the killing, Viola Moseley came to my house, in company with my little daughter, and they went on from there up to S. R. Porch's. Some time after dark Tom Porch and his wife came to my house. Their little child, about three years old, was with them. Tom came for the purpose of dressing the cancer on my wife's face. They stayed about a half-hour, during which time he dressed said cancer. They had been gone some fifteen or twenty minutes when Mrs. Lehmann came. I heard what I thought was a shot that night. Tom Porch and his wife and child had been gone from my house about a minute when I heard it, and Mrs. Lehmann came a few minutes after I heard the shot. I went with Mrs. Lehmann up to her house, and stayed just a few minutes. Defendant's counsel then turned the witness over to the State. And upon cross-examination he testified over the defendant's objection, as follows: "Mrs. Lehmann told me that a shot had been fired in Tim Nard's room. She asked me to come and go to her house, which I did. At her house she asked me to go to S. R. Porch's, and get him to come down there and bring help. She also asked me to get said S. R. Porch to phone to H. B. Gibbs, the sheriff of Mason County, and ask him to come down there. I did go to S. R. Porch's, and told them up there what Mrs. Lehmann had said. I went from there back to my home. Yes, I suppose I

knew Tim Nard was dead, from what Mrs. Lehmann had said. I did not go and tell anybody about Tim being dead. I knew that Tom Porch lived near there, but I did not go down and tell him to go to the assistance of Mrs. Lehmann, because I did not think about it. No, I did not hear that little Kidd girl, when I went up with Mrs. Lehmann to her home, running off screaming. I supposed there must be something awful the matter there, but I couldn't leave my wife. She was too sick. Yes, I knew Mr. Schulz lived close by there, and I knew the Kidd boys lived near, and I knew it wasn't far over to Tim Nard's father's, but I did not go and ask any of them to go up to Mrs. Lehmann's to stay with her. I knew that Lehmann was not at home, and had gone to Llano. I did not think about those women having to stay there by themselves with that murdered boy all night. Yes, I had a grown son, Clarence, who was at S. R. Porch's when I went up there. No, sir, I did not tell him to go down there and stay with Mrs. Lehmann. I think I did tell him he had better come home, but he didn't go because S. R. Porch said, all had better stay there. I carried my little girl home with me from S. R. Porch's. Here the State's counsel propounded the following questions to the witness: "Q. Is it not a fact that you knew on the morning after the killing, when you went up to Lehmann's house, and throughout that entire day, that Tom Porch was the man who killed Tim Nard? A. No, sir, I did not. Q. Isn't it a fact that you knew that Tim Nard was to be killed that night, and that Tom Porch was to do the work with your old muzzle loading shotgun? A. I did not. Q. When you were talking to Dee Gibbs, next morning, didn't you then know that Tom Porch was the man that murdered Tim Nard? A. No, I didn't." To all of which testimony of the witness upon cross-examination defendant objected, for the reason, that the same was hearsay and inadmissible; was the acts and declarations of the witness Vineyard and others not made in the presence of the defendant, and not binding upon the defendant. The defendant could not be held responsible for the acts and declarations of said parties. Said testimony was calculated to seriously injure the rights of the defendant before the jury. Defendant also objected to the above and foregoing questions at the time they were propounded to said witness, for the reason that the witness had not testified to anything in his examination in chief which would make the said questions relevant, and because said questions were calculated to injuriously impress the jury that there was testimony showing a conspiracy between witness and defendant to murder Tim Nard. The bill was approved by the court with the following explanation: "That witness had testified to material facts for the defendant, and the cross-examination was permitted for the purpose of showing the animus feeling or interest of the witness, and the statement of said witness was referred to by State's counsel in the closing argument to the jury as having been admitted for that purpose only, and the court in its charge so

limited all acts, declarations or omissions (if any) of said witness for that purpose."

So far as said questions which are answered in the negative are concerned, while we believe that these should not have been asked, unless the district attorney had some reason to believe he could elicit the facts from the witness, still having been answered in the negative, we can not say that this matter was prejudicial to appellant. However, witness was permitted to state a number of things that he did, or did not do, which the court says was permitted to be shown, in order to show the animus of the witness who had testified to material facts in favor of appellant. The court says that he instructed the jury accordingly, which appears to be the case. The question occurs, could the State show on cross-examination of this witness, acts done by him on that night or omission to do certain things, as going to discredit said witness in regard to what he did testify in favor of the appellant. Of course, it was admissible to prove his relationship to the appellant, which would go to his interest; and the jury would weigh that circumstance; or if he had any grounds of prejudice against deceased, or those connected with him, this might be shown, or he might be asked generally if he felt an interest on behalf of the appellant? or if he had any animosity against deceased? or those connected with him? and such facts might be proved against him. Here the particulars of what the witness did, or did not do on that occasion is proved; that is, the witness testified substantially that he knew something awful had occurred at Mrs. Lehmann's on that night. He evidently believed that Tim Nard had been killed there. He knew Lehmann had gone to Llano, and was not at home; that Mrs. Lehmann was there by herself; and he testified that he did not go there himself to stay with Mrs. Lehmann, nor did he interest himself to get any one else to go. Of course, he explained these matters, giving his reasons for his failure to give her any assistance. While it would appear that this character of testimony in the first instance would not be admissible, yet we are not informed that it may not have been properly adduced on cross-examination. True appellant objects to the same on the ground that nothing in the examination in chief authorized this testimony; but this is the statement of an objection urged, and not the certificate of the judge that the matters stated in the objection existed as a fact. As stated above, if the witness had stated, either on direct examination by appellant, or on his cross-examination by the State, that he felt no interest in the matter, and did not sympathize with appellant in the prosecution against him, he might have been cross-examined as to said matters involved in this bill of exceptions to show his interest or bias in favor of appellant. Moreover, these matters, as explained by appellant, and as limited by the court in his charge, eliminated the consideration of the same by the jury, except they might be considered as showing the interest or animus of the witness. We believe, as presented by the bill of exceptions that it is not shown that the court was

in error in admitting the testimony, or even if it be conceded that the court was in error, that as limited, the testimony was not calculated to injuriously affect appellant.

Appellant complains of the action of the court admitting against him the contents of the complaint against appellant for the theft of said hog, the complaint itself not being found with the papers of the case. The ground of objection is that sufficient search had not been made at the proper place for said complaint before secondary evidence was adduced of its contents. We gather from the bill of exceptions on this subject that the grand jury must at some time have had the papers, and after such use the papers were sent to the district clerk, who was the proper custodian of the same; and that he made an examination among the papers but did not find it. It occurs to us that a sufficient predicate was laid under the circumstances for the introduction of secondary evidence. But if it be conceded that the predicate was not sufficiently full to authorize the introduction of secondary evidence, there was no controversy as to the making of the complaint or as to its contents. We make the same observations with reference to the bond, the contents of which was proved by secondary evidence.

Appellant also objected to the introduction of said complaint and the testimony of Tim Nard at the examining trial, and to the judgment of the court holding appellant to bail, on the ground that it was not competent to prove before the jury the opinion of others regarding the guilt of appellant of the crime of theft. We believe it was competent for the State to show the complaint, or on proper predicate the contents thereof; and also to show the testimony of Tim Nard, and the judgment of the court showing that appellant was held to bail. This would show the pending case against appellant; and the evidence would show the character of the testimony of deceased Tim Nard as furnishing a motive of appellant to commit the offense charged against him. It occurs to us that the details of the testimony, or enough of the details of the testimony of deceased, were admissible against appellant in order to show the importance of his testimony furnishing a strong motive to appellant to get rid of said witness. Kunde v. State, 22 Texas Crim. App., 65; Hudson v. State, 28 Texas Crim. App., 323; Barkman v. State, 52 S. W. Rep., 73; Attaway v. State, 41 Texas Crim. Rep., 397; Weaver v. State, 46 Texas Crim. Rep., 617.

Appellant also objected to the introduction of evidence of tracks found on the ground coming to and going from the Lehmann house, the point where the party who did the shooting is supposed to have stood. Witness stated that he observed these tracks, and that they looked to him to be the same tracks—that is, made by the same person both coming and going. We believe that this testimony was admissible, and any objection urged thereto would go to the weight, and not to its competency. As we understand it, this is not a comparison between a track on the ground where the homicide occurred, and a track found somewhere else, or between the appearance of a track made by

defendant and a track found on the ground. But it is a comparison by the witness of tracks going and coming, found in juxtaposition to each other, and in the immediate vicinity of the spot where the homicide was committed. Gill v. State, 36 Texas Crim. Rep., 595; Weaver v. State, 46 Texas Crim. Rep., 617. The cases of Grant v. State, 1 Texas Ct. Rep., 103; Moseley v. State, 4 Texas Ct. Rep., 435, and Parker v. State, 80 S. W. Rep., 1008, are not in point. There is something more here than in either of said cases that enabled the witness to speak from a comparison of the tracks seen on the ground. In Moseley's case, the witness was permitted to state that the foot of appellant (which he saw at the examining trial) was of a size that would have made the tracks he saw on the ground. This was held incompetent. In Parker's case, the question of admissibility of tracks was thoroughly discussed, and the rule laid down, that before a witness would be authorized to testify that tracks found upon the ground and other tracks made by appellant were the same, that some measurement must have been made, or there must otherwise be some peculiarity in the appearance of the tracks in order to identify them as the same. But here, as stated above, the question was not as to similarity of tracks made by appellant elsewhere, with tracks found on the ground; but the similarity of tracks observed on the ground in juxtaposition with each other coming and going. We believe in such case it is competent for the witness to state that such tracks appeared to be similar as to size and appearance. In addition to this we understand the record shows that the tracks found on the ground were measured and the shoes of appellant were measured, and they were found to coincide.

By bills of exception numbers 9, 10 and 11, appellant complains of the action of the court refusing to permit him to show the details of an altercation between deceased, Tim Nard, and Oscar Haynes, which occurred at a wagon yard in the town of Llano, on the 9th of January, 1905. Appellant claims that this testimony was admissible, because it would tend to show a motive on the part of said Oscar Haynes to have committed the homicide. The court explains the refusal to admit said testimony by the statement that Haynes stated that he was not at Loyal Valley on the night of the homicide; that he lived some seven miles therefrom, and did not commit the homicide. Aside from this explanation, under the authorities, before this character of testimony is admissible, there must be something more than mere motive to commit the offense. Some testimony must be offered showing opportunity on the part of such third person, and testimony tending to show that such party may have committed the offense. Kunde v. State, 22 Texas Crim. App., 65; Murphy v. State, 36 Texas Crim. Rep., 24.

Appellant objected to certain language and statements of State's counsel in the opening argument. This had reference to the testimony against appellant relative to the theft of the hog, and bearing upon

appellant's motive in that respect, and on his failure to explain the same before the justice holding the examining trial. It occurs to us that this was legitimate argument, and not subject to the criticism indulged by appellant's counsel. The same observation made with reference to the preceding bill appertains also to the argument, as shown in bill No. 13. We believe it was competent, under the circumstances, for the State to animadvert on the failure of appellant to introduce S. R. Porch, as the explanation of the court shows he was under the rule as appellant's witness at the trial.

Appellant criticises the charge of the court on circumstantial evidence. We have examined the same, and believe it covers all the essential features of a charge on that subject. It requires the facts on which the State relies for a conviction to be proved by competent evidence beyond a reasonable doubt, and requires the same should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and requires that the facts must produce in the minds of the jury a reasonable and moral certainty that accused and no other person committed the offense charged. The charge is not as full as is usually given, but as stated, we believe it embraces the essential elements of a charge on circumstantial evidence.

Appellant also criticises the court's charge on alibi. We believe an examination of said charge, taking all of it together, relieves it of the objections urged against it. The portion set out suggests to the jury, if they find appellant was at the residence of William Vineyard, and was not present at the place where Tim Nard was shot, or if they have a reasonable doubt thereof, to acquit him. This was responsive to some of the testimony on that subject. Besides this, the court gave a general charge on the subject of alibi, and both taken together, sufficiently safeguarded appellant's rights.

The charge of the court with reference to how the jury might consider the testimony of Tim Nard, regarding the theft of the hogs, to the effect that they could not consider it as bearing on the question of his guilt, it occurs to us was a charge more favorable to him than he was entitled to. As to that part of the testimony charged with regard to threats, that was a part of the written testimony of Tim Nard before the examining court. We do not understand it to be controverted, but the charge itself refers to the written evidence as alleging theft of the hog and threats.

Appellant strenuously insists that the corpus delicti was not proved. It does not occur to us that the testimony leaves any issue concerning the death of deceased by violence inflicted by some person other than himself. The circumstances of the case eliminate the question of suicide. We believe there is sufficient testimony to identify appellant as the party who committed the homicide.

There being no reversible error in the record, the judgment is affirmed.

*Affirmed.*