## ELBERT TAYLOR v. THE STATE.

### No. 4389. Decided May 23, 1917.

**1.—Murder—Evidence—Imputing Crime to Another—Alibi—Circumstantial Evidence.**

Where, upon trial of murder, defendant pleaded an alibi and offered evidence to the effect that a short time before the homicide deceased drove his wife away from home and back to her mother, and that his father-in-law, Fisher, and the members of his family were not on speaking terms with deceased, at the time of the homicide, which testimony the court excluded, and it appeared in the record on appeal that the State relied on circumstantial evidence alone to show defendant's guilt, and as one of the circumstances, proved that he and members of his family were not on speaking terms with deceased and lived near the scene of the homiside. Held, that it was competent for defendant to show that others in proximity to the homicide 'had a motive to slay deceased, and the rejection of the above testimony was reversible error. Following Burkhalter v. State, 79 Texas Crim. Rep., 336, and other cases.

**2.—Same—Evidence—Imputing Crime to Another.**

Where, upon trial of murder, the court excluded evidence that several parties named entertained unfriendly feeling towards deceased, there was no reversible error, as such alleged parties were not brought within such proximity to the offense, as to bring the testimony within the rule. Following Wallace v. State, 46 Texas Crim. Rep., 349, and other cases.

**3.—Same—Disqualification of Judge—District Court—Special Venire.**

Where, upon trial of murder, the regular district judge was disqualified to sit in the case, and did not try the same, but set the case for a certain day and ordered a special venire of seventy-five men. Held, that, while the judge could set the case, he should not have presided over the court, which afterwards tried the defendant, when the list of men from whom the trial jury was selected was drawn; as the Constitution forbids him to sit in the case, and this comes within the inhibition.

Appeal from the District Court of Caldwell. Tried below before the Hon. George Calhoun, the regular judge being disqualified.

Appeal from a conviction of murder; penalty, twenty-five years in the penitentiary.

The opinion states the case.

*Jeffrey & Fielder* and *Will G. Barber,* for appellant.—On question of disqualification of judge and special venire: Knight v. State, 147 S. W. Rep., 268; Cock v. State, 8 Texas Crim. App., 659; Reed v. State, 11 id., 587.

At risk of being tedious, we wish to note some of the many cases

illustrating our statement, and in the following it is held that the disqualified judge was without power to do the things noted; that is:

(a) Can not dismiss case for want of prosecution. Garrett v. Gaines, 6 Texas, 435.

(b) Can not appoint commissioners of partition by agreement. Jouett v. Gunn, 35 S. W. Rep., 194.

(c) Nor pass upon making new party. Seabrook v. Bank, 171 S. W. Rep., 247.

(d) Nor take affidavit of inability to make appeal bond even when not contested. Kalklosh v. Bunting, 88 S. W. Rep., 389.

(e) Nor order issuance of writ of certiorari. Comstock v. Lomax, 135 S. W. Rep., 185; Fellrath v. Gilder, 1 W. & W., sec. 1060.

(f) Nor conform guardian's sale. Jirou v. Jirou, 136 S. W. Rep., 493.

(g) Nor approve claim against estate. City v. Bank, 71 S. W. Rep., 799; Burks v. Bennett, 62 Texas, 277.

(h) Nor make orders permitting filing quo warranto information. State v. Burks, 82 Texas, 584. In this case Judge Henry said the making of the order, whether in term time or in vacation, was "an exercise of the judicial discretion of the judge" and that "no distinction can be recognized between the authority of a disqualified judge to make such an order and to preside at the trial of the cause."

(i) Nor enter judgment pro confesso. Chambers vs. Hodges, 23 Texas, 112.

(j) Nor enter order dismissing as to related party. Gains v. Barr, 60 Texas, 676.

(k) Nor order of general dismissal. Garrett v. Gaines, 6 Texas, 435.

(l) Nor extend time for filing bills of exception and statement of facts. Dolson v. Sheridan Co., 178 S. W. Rep., 663.

(m) Nor render judgment by default. Fechheimer v. Washington, 77 Ind., 366.

(n) Nor forfeit bail bond nor grant rule nisi thereon. Marks v. Smith (Ga.), 60 S. E. Rep., 1016.

(o) Nor authorize sheriff to amend return on process. Morrissey c. Gray (Cal.), 117 Pac. Rep., 438.

(p) Nor change venue. Mordica v. State, 137 Pac. Rep., 574, 22 Wyo., 1916; State v. Sup. Ct., 153 Pac. Rep., 1078.

(q) Nor appoint special county attorney to act for one who is disqualified. Dodd v. State, 5 Ok. Cr. Rep., 513, 115 Pac. Rep., 632.

(r) Nor extend time to file motion for new trial. Frevert v. Swift, 19 Nev., 363.

(s) In People v. de la Guerra, 24 Cal., 73, it is held that a disqualified judge could perform only ministerial acts and not acts which require consideration and the exercise of judgment, and, accordingly, that he had no power to dismiss the case upon the theory that the pleading disclosed that there was nothing to be tried, and, therefore, no occasion for him to send the case to another county.

The citations above show that the courts have been liberal in grasping the spirit of the constitutional and statutory inhibition against a judge acting or sitting in any capacity when his relation to the parties or the subject matter is such as to suggest the possibility of his judgment being, perhaps unconsciously, improperly influenced. It has been frequently remarked that the judiciary should at all times in its conduct be as free from possible suspicion as Caesar's wife, and the inclination of the courts is to resolve any doubt in favor of the Constitution and against the action of the disqualified judge.

On question of imputing crime to another: Burkhalter v. State, 184 S. W. Rep., 221, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, *E. B. Coopwood, J. B. Hatchitt,* and *Nye H. Clark,* for the State.—On question of disqualification of judge: Pocket v. State, 5 Texas Crim. App., 552; Cordova v. State, 6 id., 207; Murray v. State, 21 id., 466; Roberts v. State, 17 S. W. Rep., 450; Harrelson v. State, 60 Texas Crim. Rep., 534, 132 S. W. Rep., 783; Coke v. State, 8 Texas Crim. App., 666; 17 Am. & Eng. Ency. of Law, 2nd ed., vol. 17, p. 732; 27 Cyc., p. 793; Commissioner v. Smith, 5 Texas, 471; Ex parte Virginia, 100 U. S., 339; Clark v. Finley, 54 S. W. Rep., 346; People v. Doom, 97 Cal., 171; Oxford v. State, 94 S. W. Rep., 464.

Upon question of imputing crime to another: Henry v. State, 30 S. W. Rep., 802, and cases cited in opinion.

MORROW, JUDGE.—This appeal is from a judgment condemning appellant to twenty-five years confinement in the State penitentiary for the murder of Rex Chamberlain.

The deceased was killed by a discharge of buckshot from a shotgun shortly before dark on December 24, 1915. The homicide took place in the vicinity of Taylor's store, which was owned by appellant's uncle, and along a road running in an eastern direction from the store there were situated on the south side the premises of Ivan Taylor, a brother of appellant, about 250 yards from the store, appellant's premises, approximately two-thirds of a mile from the store, deceased's barn, about a mile from the store, and on the north or left hand side, were deceased residence, just across the road from his barn, and a pasture, known as Fischer's pasture, and deceased's field, in which he was killed, at a point about 500 or 600 yards from the store. Appellant's father lived between 500 and 600 yards south of the point at which the homicide took place. All the parties mentioned had lived in the neighborhood for several years, and there was evidence that for one or two years prior to the homicide appellant and deceased were not on speaking terms and that other members of appellant's family, including his father and brother, were not on friendly terms with the deceased. There was evidence that it was customary to have a turkey shoot at

the store on Christmas Eve, and on the morning of the day of the homicide appellant went to the store, taking his shotgun with him and leaving it in the custody of his uncle at the store. Appellant's cousin, Hugh Taylor, and a witness named Arthur Gabriel, claimed to have found some bottles of whisky at a culvert near the store mentioned, and it was shown that they and appellant started on horseback for this culvert and on their way met deceased. As they approached appellant suggested that they should not stop and appellant did not stop, though the others did so, and invited deceased to drink. The bottle of whisky which was offered him was labeled "Old Taylor," observing which deceased made a remark about the Taylor name, which offended Hugh Taylor, and some words followed, and deceased assaulted Hugh Taylor, who ran away on horseback, the deceased following him. Appellant had no part in this controversy, but when it took place he rode to Hugh Taylor's house, which was nearby, and told Hugh Taylor's wife that the deceased had Hugh cut off from his home and that the appellant wanted a gun to assist him. She objected to his having the gun and said that she would go after her husband, and she claimed that as she was about to do so deceased, in company with a Mr. Cast, passed along the road. Appellant remarked that he would not need the gun. It appears that appellant then rode back to the store and obtained his gun from his uncle, had some conversation about immaterial matters with the parties at the store and then taking the gun with him got on his horse and rode away. Before going, however, his brother Ivan handed him some cartridges, the testimony being conflicting as to whether they were loaded with buckshot or bird shot, one witness testifying that Ivan said at the time: "Shoot low." This was contradicted partly by cross-examination of the witness and partly by other testimony. A witness testified that approaching the store from the east he passed along the road mentioned late in the evening of the day of the homicide and when he reached a point near the barn of the deceased he heard a report sounding like a gun or firecracker; that he noticed deceased's wife in the barn lot milking, and that when he reached the point opposite the Chamberlain field he noticed the deceased's horse saddled and looking somewhat excited and standing near the southeast corner of the field, and at the same time saw a man about 140 yards away going off through the brush; that he merely glanced at him and could give no accurate description of him further than he had on what he took to be a regular brown hunting coat. He took the man to be Chamberlain and said that he was not going in the direction of the appellant's house but was going down through the Fischer pasture. The appellant testified and introduced the testimony of several witnesses as to his whereabouts at and about the time of the homicide, and their testimony, if believed, was sufficient to establish an alibi. There was evidence that near the point where the deceased was killed were some bushes cut away and knee prints on the ground, presumably indicating the locality of the party who fired. There was evidence introduced of tracks found

in the Chamberlain field and that these tracks fitted the shoes belonging to appellant and which a witness testified appellant claimed to have been wearing at the time. The tracks, however, were not discovered until several days after the homicide. They were not characterized by any peculiarity, and there as evidence that a number of persons were in the field during the night on which the homicide occurred. There was evidence that appellant was not wearing the shoes mentioned but was wearing boots of a different shape and that he did not claim to have been wearing the shoes on the day of the homicide. This is a partial statement of the evidence; the record is so long as to preclude a complete statement.

The court charged the jury on the law of murder, alibi and circumstantial evidence.

In one of his bills of exception appellant complains of the exclusion of evidence to the effect that a short time before the homicide deceased drove his wife away from home and back to her mother, and that his father-in-law, Fischer, and the members of his family were not on speaking terms with deceased at the time of the homicide.

Appellant sought to draw out this proof on cross-examination of the witness McMahan, who testified in part as follows: that he went to the Chamberlain field in search of Rex Chamberlain on the night of the evening when he was killed and found his body in the field about 7 or 8 o'clock and after dark. He stated that he thought he was the first one who found the body; that his wife and Rex Chamberlain's wife were sisters, both being daughters of old man Gus Fischer; that said Fischer was in attendance upon the court; that said Fischer at the time Chamberlain was killed had three sons-in-law living right there close in the section of where Chamberlain was killed, and two a little further off; that said Fischer had grown sons; that said Gus Fischer is about sixty years old; that this witness, McMahan, was at said Fischer's house that night when he heard about the body of Chamberlain; that two other sons-in-law of Fischer were at his house then, they being Wallis Star and Fred Williams; that the occasion of their being at Fischer's house was that one of Fischer's sons had been away and hadn't been in for a good while and came in that day and they had gathered at Fischer's house on account of the return of this son; that from the place where he found Chamberlain's body in the field straight through the pasture to Gus Fischer's house is a mile or a little further; that the Fischer boys lived there with their father, Gus Fischer; that from the place where Chamberlain's body lay through the Fischer pasture across to where the witness McMahan lived would have been something over a mile and to where Edgar Petty then lived something like three-quarters of a mile.

The court, explaining the bill, says that the evidence was excluded because the parties inquired about were not in such proximity to the offense as would make it reasonably probable that they slew the deceased. The bill shows that the father and some of the brothers and

brothers-in-law of deceased's wife lived in the vicinity, and though it was not shown any of them were present at the time of the homicide, it was shown that they were not out of the country but that they were in the immediate locality about the time; that the premises upon which they lived adjoined those on which the deceased was killed. There were more or less brush and trees on these premises favoring concealment. A few moments after the homicide an unidentified man was seen in the pasture of the relatives of the deceased's wife traveling in the direction of their home and not going towards the home of appellant. Just what proximity to the offense is required to render testimony of motive on the part of a third person admissible is not defined, and we presume that it can not be defined but that it would be necessary to interpret it with reference to the facts of each individual case. In Burkhalter v. State, 79 Texas Crim. Rep., 336, 184 S. W. Rep., 222, such testimony was held material where the defendant's evidence tended to show that the third party was in the neighborhood less than a mile of the killing, and where the State failed to account for his presence at the immediate time of the killing. We think it may be fairly stated that under the decisions of this court, the State relying upon circumstantial evidence alone to show appellant's guilt and as one of the circumstances has proved that he and members of his family were not on speaking terms with the deceased, it was competent for him to show that others in proximity to the homicide had a motive to slay deceased. In cases depending upon circumstantial evidence, "the mind having nothing to rest upon seeks knowledge and light from every source." (Dubose v. State, 10 Texas Crim. App., 250.) Every reasonable hypothesis should be explored, and evidence which tends to show that another and not the accused committed the offense, or which may create in the minds of the jury a reasonable doubt as to the identity of the slayer, or which presents a hypothesis which is inconsistent with the guilt of the accused or consistent with his innocence, should not be rejected by the court because the circumstances pointing to the accused on trial are more numerous or more cogent than those pointing to others. In our opinion, the facts set out in the bill bring the testimony offered within this rule. Murphy v. State, 36 Texas Crim. Rep., 24; Burkhalter v. State, 79 Texas Crim. Rep., 336, 184 S. W. Rep., 221; Pace v. State, 135 S. W. Rep., 379; Kirby v. State, 49 Texas Crim. Rep., 517, 93 S. W. Rep., 1031; Kunde v. State, 22 Texas Crim. App., 65; Hart v. State, 15 Texas Crim. App., 202; Dubose v. State, 10 Texas Crim. App., 230; Sawyer v. State (Tenn.), 15 Lea, 694; 1 Wigmore on Ev., secs. 139 to 141.

By other bills appellant complains that the trial court rejected evidence that several other parties named entertained unfriendly feeling towards deceased and insists that this proof should have been admitted. We do not regard this testimony admissible under the rule touching such evidence prevailing in this State. It does not come within such proximity to the offense to bring it within the rule. Wallace v. State,

46 Texas Crim. Rep., 349; McCorquodale v. State, 54 Texas Crim. Rep., 344, 98 S. W. Rep., 881; Ogden v. State, 58 S. W. Rep., 1018; Brown v. State, 74 Texas Crim. Rep., 356.

The regular judge of the District Court trying this cause was disqualified to sit in the case under article 5, section 11, of the Constitution, and under article 617 of the Code of Criminal Procedure. He did not try the case, but set it on the docket for a day and ordered a special venire of seventy men. The judge trying the case overruled appellant's motion to quash this special venire, based upon the contention that the disqualification of the regular judge to sit in the case rendered void the orders mentioned. Article 655 defines a special venire as a writ issued by order of the district judge in a capital case, and article 658 defines the terms of the order, directing that it specify the number of persons to be summoned and the time they are to attend, the time the writs are to be returnable, and article 661 prescribes the manner of drawing the special venire and directs that the names selected by the jury commissioners for special venire service shall be placed on tickets of the same size and color and placed in a box and shaken up, and from this box the clerk, in the presence of the judge, in open court, shall draw the number of names required for further venire service. Appellant contends that there was error in failing to sustain his motion to quash the venire. On this question both the appellant's and the State's counsel have filed very interesting and very able briefs and arguments, the appellant contending that the acts done by the disqualified judge involved the exercise of judicial discretion, and were consequently inhibited; the State insisting that while the acts may have required the exercise of some discretion, they were, nevertheless, ministerial in their nature, and such as might be legally done.

The briefs and arguments evidence great research and ability, but disclose but few cases directly touching the point involved. It is very forcibly and plausibly argued that the fact that it has been held that the defendant's presence was not necessary at the drawing of the special venire indicates that that act would not be within the inhibition of the Constitution. In Cox v. State, 8 Texas Crim. App., 666, the question was whether the disqualified judge might receive the indictment. This question was answered in the affirmative, and discussing the matter, the court says that the phrase "sit in any case" means to try the case and that the disqualified judge would not be incompetent to preside in taking incidental orders. In Reed v. State, 11 Texas Crim. App., 606, the court says: "The judge shall not 'sit,' which evidently means make any orders in or try any case." The appellant refers to the case of Salm v. State, 8 So. Rep., 67, where the Supreme Court of Alabama under a statute somewhat similar to ours held that setting the case and drawing the venire were among the things which a disqualified judge could not legally do.

The setting of the case, we think, is one of the incidental orders

which the disqualified judge might make. Am. & Eng. Ency. of Law, vol. 17, p. 732; Cyc., vol. 27, p. 793.

The act of deciding how many special veniremen shall be drawn and the act of presiding in court when the list of men from whom the trial jury is to be selected is drawn as provided by article 661, supra, are so intimately associated with the trial of the case, and capable of so potent an influence thereon that we believe they are among the things which the Constitution forbids a disqualified judge to do when it says he shall not "sit in the case."

We have considered the other assignments and are of the opinion that no reversible error is presented by any of them.

For the errors pointed out the judgment of the lower court will be reversed and the cause remanded.

*Reversed and remanded.*