## LOVEL v. STATE.   (No. 7319.)

(Court of Criminal Appeals of Texas. Feb. 7, 1923. Rehearing Denied March 7, 1923.)

1. **Homicide ⊜250 — Circumstantial evidence held sufficient to sustain conviction for murder.**

In a prosecution for murder, circumstantial evidence *held* sufficient to sustain conviction.

2. **Criminal law ⊜552(3)—Circumstantial evidence must exclude every other reasonable hypothesis arising from evidence on trial.**

The law requiring that circumstantial evidence must exclude every other reasonable hypothesis, consistent with innocence, does not mean that it shall exclude every imaginary hypothesis, but has reference to the reasonable hypotheses arising from the evidence adduced upon trial.

3. **Criminal law ⊜787(2)—Charge that failure of accused to testify should not be considered against him or discussed by jury in retirement held not erroneous.**

In a prosecution for murder, a charge that the failure of accused to testify should not be considered as a circumstance against him nor discussed by the jury in their retirement was not erroneous.

4. **Criminal law ⊜762(5)—Warning in charge against finding verdict by chance or lot held not improper.**

A warning contained in the court's charge against finding a verdict by chance or lot, prefaced by the statement, "If you find the defendant guilty, etc.," *held* not subject to the interpretation that it indicated that the court believed accused guilty.

5. **Homicide ⊜166(10)—Where robbery motive relied upon, evidence that four months prior to homicide deceased carried considerable money on person admissible.**

In a prosecution for murder, where the state relied upon robbery as the motive, evidence that deceased in May, preceding the homicide in September, was in possession of a considerable sum of money which he was accustomed to carry upon his person, was relevant to the issue, and not too remote as to require its exclusion.

6. **Criminal law ⊜338(6)—Character evidence as to persons not in proximity to offense held irrelevant.**

In a prosecution for murder, the exclusion of evidence that persons who had associated with deceased, but who were last seen in his company about 20 days before the homicide, with no suggestion that they were in such prox-

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

imity to the offense as rendered an inquiry into their character relevant, "played the fiddle for negroes," *held* proper.

**7. Homicide ⊚⟿319 — Overruling motion for new trial for newly discovered evidence of remark of person not in such proximity to crime as would warrant inquiry into his motive to commit it not erroneous.**

In a prosecution for murder, the overruling of a new trial for newly discovered evidence that one other than accused about 20 days before the homicide had inquired of the witness as to the amount of money the deceased had, stating that it would be good picking to get it, in the absence of evidence of his proximity to the scene of the crime as would make pertinent an inquiry into his motive for committing it, was not error.

**8. Criminal law ⊚⟿938(1)—Trial for newly discovered evidence not granted unless movant was unaware of purported testimony.**

A motion for a new trial for newly discovered evidence will not be granted, where it is not affirmatively shown that movant was unaware of the purported testimony set up.

Appeal from District Court, Ellis County; W. L. Harding, Judge.

B. L. Lovel was convicted of murder, and he appeals. Affirmed.

Lamar Bethea, of Bryan, for appellant. W. A. Keeling, Atty. Gen., and C. L. Stone, Asst. Atty. Gen., for the State.

MORROW, P. J. The judgment condemns appellant to confinement in the penitentiary for a period of 25 years for the murder of J. N. Hale.

The evidence is circumstantial. This is a synopsis of it: J. N. Hale was a man about 70 years of age, small in stature, of weight estimated from 125 to 140 pounds. In the month of May preceding his death in September, Hale had traveled in Wilbarger and Wichita counties, returning to Bosque county about the middle of May. While on this journey, he was seen to have in his possession a considerable sum of money, estimated by the witness at $300 or more. He had relatives in Acquilla, Hill county, Tex. He owned a hack and two small mules, a tent, a trunk, and some camping equipment. He, in company with Burl Allbright, traveling in this equipage, came to the home of the witness Steele, in Hill county, where they engaged in picking cotton for Steele. The father of Allbright and, as we understand it, some other members of his family, were also on the premises, as was the appellant Lovel. The Allbrights suddenly decided to cease working for Steele and said something about borrowing money from the deceased. The appellant also, without notice to Steele, quit his employment, and he, with the others mentioned, left Steele's premises on the 7th of September. Appellant was indebted to Steele in the sum of $10, and on that account Steele followed the parties and overtook them on the road near Hillsboro and demanded payment from the appellant. Appellant said that he could not pay it, as he was without funds, but would send the money later. Steele received the $10 by mail some days subsequent to the interview mentioned and antecedent to the time of the death of Hale. In the interview with Steele about the money, Hale said that he would stand good for it, but Steele told him that it was Lovel that owed the money and not Hale.

The record is silent as to the movements of the appellant and the deceased until they appeared in Ellis county on Tuesday, the 27th day of September. They were alone in the hack, which has been described, driving the mules. They discussed with the witness Lewis the subject of picking cotton for him. The deceased was inclined to do so. Appellant demurred, however, and insisted that they should go out West, where the cotton was more plentiful. During the same day, they were seen by various witnesses traveling in the same manner at points in the edges of Kaufman and Ellis counties. In the evening about 5:30, they were seen by the witness Bobo. He had a conversation with the deceased while the appellant was standing near by. The wagon at the time was stopped and the parties were on the ground. Apparently they were making preparation to camp and were inquiring about water.

On the following morning the wagon was observed on an old road about three miles from Rice and about six miles from where the witness Bobo saw them the evening before. The harness had been removed and the team was released and was seen in the vicinity. No person was seen about the wagon. On the Friday following, the wagon was inspected by some passers-by and found to contain the body of J. N. Hale. The circumstance was reported and an investigation inaugurated by officers and neighbors. It was found that the deceased was lying in the wagon covered with a gunny sack and with a tent; that on top there were lying two pieces of plank about five or six feet long and six or eight inches wide, and sprinkled with blood. The shirt of the deceased was torn, his feet were bare, his trousers were off, a pair soaked with blood was in the wagon, and his drawers were pulled down over his feet. There was an axe in or near the wagon with blood on the axe and handle. There were buckets of dirt with blood and trash mixed with them, including some sorghum fodder. There was a shovel and a trunk. The body of the deceased was in a state of decomposition, indicating that his death had occured several days prior to the discovery of his body, and on

---

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the front of his head there was a wound apparently made with a blow from the axe. It had crushed the skull and was about the size of the back end of the axe found.

On the following day the remains of the camp at the point where the witness Bobo had seen and conversed with the parties on Tuesday was discovered and examined. There were indications that a meal had been cooked. The place where the wagon had stood and a fire built were identified, and some little distance away there was a small pile of sorghum near which there was found blood and gray human hair upon the ground. The ground at this point bore evidence of having been scraped off and part of the surface removed. The dirt found in the buckets at the wagon was identified as being like that where the scraping had taken place. Between the sorghum stack and the place at the camp fire where the wagon had stood there were tracks made by a man who was shod and indicated that he had passed back and forth several times between the shock of sorghum and the camp fire; that the passage had not been in direct lines, but that there had been several trips. There were also barefoot tracks of a man leading from the camp fire to the shock of sorghum, but no indication of their return. None of the tracks led further than to the shock of sorghum.

Several days after the discovery of the body of Hale, papers belonging to him were found in a mud hole nearby. Some indications that there were some papers there led to the pumping of the water out of the hole, and the papers found bore his name.

The place at which the body of Hale was found was near the town of Rice and near the interurban railroad.

Early in the morning of the 28th of September, the appellant appeared at the town of Ennis in Ellis county and purchased a pair of shoes, a shirt, hat, and a pair of trousers. He paid for them with the $20 bill, receiving the change. He was the first customer at the store that morning. He appeared somewhat nervous and hurried. He bought the articles as they were displayed to him without any effort at selection and made no inquiry as to prices. The witness who saw him took no note of his trousers or his shoes. He noticed that he had on a blue shirt and had a coat on his arm. No blood was noticed on his clothing. He took the $20 bill mentioned from a roll of money about 1½ or ·2 inches in diameter. The denomination of the bills in the roll was not known by the witness.

There was evidence that the appellant had previously worn tennis shoes; that the deceased was in the habit of carrying his money on his person; that he was secretive about it, and that at times he would put it in his shoes, and, when it became necessary to make a purchase and payment of a small amount, he would turn his back so as not to exhibit the money in his possession.

The appellant was arrested somewhere near the town of Bryan, Brazos county, Tex.

[1] The appellant insists that the evidence does not meet the measure demanded by the law with reference to circumstantial evidence. That the deceased was killed by a blow from an axe is not open to question. He was alive and in company with the appellant alone on Tuesday evening. They camped together. Circumstances indicate that they had been together for some time. On the following morning, the wagon in which they had been traveling and the dead body of the deceased were at a point several miles distant from the place at which they had camped on the evening before. The evidence indicates that the homicide took place at the camp; that the axe which was in the possession of the two was the weapon used; that in his endeavor to obliterate the evidence of the homicide at that place, buckets and a shovel which were in the possession of the appellant and the deceased were made use of. There was evidence that the deceased, near the beginning of the cotton picking season, had in his possession a sum of money; that during the season he was engaged in the business of picking cotton for others; that he was in the habit of carrying his money upon his person. There is no suggestion in the record that he had made any disposition of it.

The appellant, some three weeks before the homicide, was without money, according to his statement at the time. Early in the morning following the homicide, he was well supplied with money and was using part of it to change his apparel, and immediately went to a distant county. The evidence suggests no separation of the parties between the time they camped on Tuesday night and the time of the homicide. The distance from the place of the camp and the place where the body was found, connected with the means of travel, suggests that the homicide must have taken place early in the night. This is accentuated by the fact that early in the morning following the homicide, the appellant had found his way to the town of Ennis. That some one had killed deceased and put his body into his wagon and drove his team in the nighttime to the point where the body was found, which was near the interurban railroad, is conclusive.

The opportunity of the appellant to know whether the deceased had money and the amount of it was furnished by the evidence of their previous association. The absence of any testimony of their separation before the deceased was killed, and the conclusive nature of the testimony that they were together a short time anterior to his death,

are cogent circumstances pointing to the appellant as the perpetrator of the crime.

[2] A series of inculpatory facts against the appellant were proved by evidence beyond a reasonable doubt, according to the finding of the jury. In fact, the evidence establishing the facts upon which the state relies is not controverted. The law requiring that the circumstances must exclude every reasonable hypothesis does not mean that it shall exclude every imaginary hypothesis, but it has reference to the reasonable hypotheses arising from the evidence adduced upon the trial. Shultz v. State, 13 Tex. 401; Hamlin v. State, 39 Tex. Cr. R. 579, 47 S. W. 656; Porch v. State, 50 Tex. Cr. R. 335, 99 S. W. 102; Wallace v. State, 46 Tex. Cr. R. 341, 81 S. W. 966; Taylor v. State, 81 Tex. Cr. R. 359, 195 S. W. 1147; Taylor v. State, 87 Tex. Cr. R. 338, 221 S. W. 611; Parish v. State, 85 Tex. Cr. R. 81, 209 S. W. 678.

The evidence adduced upon the trial, in the absence of any testimony suggesting a reasonable hypothesis consistent with the innocence of the appellant, in our judgment, presented a question of fact touching the identity of the perpetrator of the homicide, and that the finding of the jury upon the issue thus presented in favor of the state and sanctioned by the trial court is conclusive on this appeal.

[3] Under the precedents, the court was privileged in his charge to the jury to give warning against the use against the appellant of the fact that he had failed to testify. In the instant case the court told the jury that the appellant's failure to testify must not be considered by them as a circumstance against him nor discussed by them in their retirement. This was not error. Dougherty v. State, 59 Tex. Cr. R. 464, 128 S. W. 398; Branch's Ann. Tex. Penal Code, § 377, and cases there collated.

[4] The warning contained in the court's charge against finding a verdict by chance or lot was not subject to the interpretation that it indicated that the court believed the appellant guilty. The warning is prefaced in the charge with the statement that "if you find the defendant guilty, etc." See Hart v. State, 47 Tex. Cr. R. 156, 82 S. W. 652; Lewis v. State, 89 Tex. Cr. R. 345, 231 S. W. 113.

[5] The evidence that the deceased, about the middle of May, immediately antecedent to the homicide, which took place on the 27th of September, was in possession of a considerable sum of money which he carried about his person, was made a subject of objection. It was the privilege of the state to prove the motive for the homicide. To furnish this, it relied on circumstances to show robbery. It was proved, without objection, that it was the custom of the deceased to carry a quantity of money upon his person. The evidence complained of was relevant upon this issue, and we think not so remote as to require its exclusion.

[6] On cross-examination of a state witness, appellant proved that "the Allbrights were pretty tough characters." Rejection of the additional proof that they "played the fiddle for negroes," we think was not error. The record reveals that the Allbrights were last seen in the company of the deceased on the 7th of September, at a place far distant from that at which the homicide took place; that on the day of the homicide the appellant alone was in company with the deceased, and there was no suggestion from the evidence that the Allbrights were in such proximity to the offense as rendered an inquiry into their character or reputation relevant, even if otherwise properly pursued. Wallace v. State, 46 Tex. Cr. R. 349, 81 S. W. 966; Taylor v. State, 81 Tex. Cr. R. 365, 195 S. W. 1147.

[7] The same principle supports the court's action in overruling the motion for new trial based upon the alleged newly discovered evidence embraced in the unsworn statement of J. M. Clark to the effect that about the first of September preceding the homicide, Burl Allbright inquired of the witness if he knew the amount of money that old man Hale had, and stated that it would be "good picking" to get it. There is no such evidence of the proximity of Burl Allbright to the scene of the killing as would make pertinent an inquiry into his motive for committing the offense of which the appellant is charged. In addition to the cases cited above, see McCorquodale v. State, 54 Tex. Cr. R. 344, 98 S. W. 879; Ogden v. State (Tex. Cr. App.) 58 S. W. 1018; Brown v. State, 74 Tex. Cr. R. 356, 169 S. W. 437; Taylor v. State, 87 Tex. Cr. R. 338, 221 S. W. 611; Porch v. State, 50 Tex. Cr. R. 336, 99 S. W. 102. In the case of Harrison v. State, 47 Tex. Cr. R. 393, 83 S. W. 699, it is said:

"The rule is now well established that evidence which merely shows some animus or hostility of some third person against the deceased. and no proximate connection with the killing, will not be admitted."

[8] It may be added that the motion for new trial does not comply with the rule relating to newly discovered evidence, in that it does not affirmatively appear that the appellant was unaware of the purported testimony by the witness Clark. See Tuttle v. State, 6 Tex. App. 556; Parker v. State, 63 Tex. Cr. R. 464, 140 S. W. 337.

Deeming the evidence sufficient to support the verdict, and finding no reversible error presented for review, the judgment is affirmed.

### On Motion for Rehearing.

LATTIMORE, J. Appellant presents his motion for rehearing, setting out the testi-

mony at length and insisting that it is not sufficient to support the conclusion of guilt arrived at by the jury. In our original opinion we reviewed the evidence and were unable to agree with the contention of appellant. We are still of the opinion that the circumstances in evidence not only coincide with and render probable the guilt of the accused, but that they exclude every other reasonable hypothesis except that of guilt. We do not care to review the entire evidence. The continued association of the parties up to and including the night of the homicide; the lack of funds on the part of appellant prior to said killing; his possession of considerable money immediately thereafter; the fact of the possession of rather large sums of money by deceased prior to the homicide; the sudden disappearance of appellant without explanation on the night of the homicide; his appearance the next morning at an office of the interurban railway, near a station on which the mutilated body of deceased was later found; the utter lack of any suggestion supported by any tangible theory of the commission of the homicide by any other— these and other matters were in evidence and considered by the jury, and we are unwilling to believe that in their conclusion of guilt they went beyond the province of fair-minded men seeking to arrive at a correct solution of the guilt or innocence of a fellow citizen.

Being unable to agree with appellant, and believing that he has had a fair trial, and that the testimony, supports the conclusion of guilt. the motion for rehearing will be overruled.