P. F. ROBIDOUX v. THE STATE.

No. 13862. Delivered January 14, 1931.
Reported in 34 S. W. (2d) 863.

The opinion states the case.

*R. L. Daniel* of Victoria, *Lewis Wood* of Houston and *W. L. Edwards* of Victoria, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, two years in the penitentiary.

The facts in this case show that appellant lived alone upon an island at the mouth of the Guadalupe river; that on the night of the alleged homicide a Mr. Moore with his two grown sons came up said river to a point near the house of appellant where, by reason of a raft in the river, they could go no further. Said parties were going fishing. They were about to turn back but were invited by appellant to anchor their boat and fish by said island. They complied. The two sons landed and spent quite a time laying out, assorting and untangling their lines, after which they seem to have gone to set out their trot-line. Appellant had invited them to come up to his house after supper. The two sons went, but the father remained on board their boat, being indisposed.

The State introduced the elder Mr. Moore who testified that after supper, on the night in question, his sons went up to the house of appellant, leaving him on board the boat; that they did not return. Next morning appellant rowed out to the boat of Mr. Moore, called him and said he had very bad news for him,—that he had killed both of his sons; that he had to kill them to save himself. Mr. Moore left, notified other parties, who notified the sheriff, and later in the day the sheriff went to said island, and in the water beside same he found the bodies of the two sons of Mr. Moore, each of whom appeared to have been killed by blows struck with some blunt instrument. There was much blood and evidences of a struggle in the house of appellant. Appellant's clothes were bloody. He was arrested and taken to the county seat where, it seems, he made a written statement concerning the affair to the county attor-

ney after having been warned. Later it further appears that he had an examining trial at which time he also made another statement which was reduced to writing. Still later it is shown that upon a habeas corpus hearing appellant again took the stand and went into detail describing the circumstances of the killing, and that this was also reduced to writing. The State did not see fit to introduce upon this trial any of the written statements made by appellant.

Appellant, as the only living eye-witness to the tragedy, took the stand on this trial and testified, his testimony making out a case of self-defense. He detailed an assault made upon him by James Moore, the younger of said two sons, the conflict winding up by his striking James upon the head with his gun killing him. He then further testified to the fact that Wellits Moore, the other son, and the one whose killing is made the subject of the prosecution in the instant indictment, advanced upon him with a stick of stove wood which Wellits was holding in his hand by the end raised as if to strike, and that appellant struck Wellits successive blows with the barrel of the gun, killing him. The conflicts took place in a room in the next one to which was a kerosene lamp, evidently the light was poor, the circumstances involved followed each other rapidly, and the whole matter took place in a short space of time. Appellant introduced a large number of witnesses from all walks of life who had known him intimately for many years, all of whom without exception bore witness to his good reputation and character for truth and veracity, as well as for being a peaceable, law-abiding citizen. These men testified that they knew him well enough and esteemed him highly enough to be willing to testify that he was worthy of being believed upon oath, even in a matter of the gravest seriousness to him. We deem it necessary to notice but two complaints made by appellant's counsel of matters of procedure.

In his charge to the jury the court instructed them as follows:

"You are further instructed that when the admissions or confessions of a defendant are introduced in evidence by the State and such admissions or confessions contain exculpatory or mitigating statements, then the whole of the admissions or confessions are to be taken together, and the State is bound by them, unless they are shown to be untrue by the evidence; such admissions or confessions are to be taken into consideration by the jury as evidence in connection with all the other facts and circumstances of the case." The above was in reference to oral admissions of appellant, in evidence. No other reference or instruction was given the jury as to the

right of the accused to be acquitted in the event he made statements in his confession which were proven by the State, which if not shown to be false would exculpate him or entitle him to an acquittal. This charge was excepted to upon the ground that same was indefinite, and that a general charge on admissions or confessions was not sufficient, but that the appellant was entitled to have a definite and positive charge such as appears in his special charge No. 1, which is as follows:

"Gentlemen of the Jury: The State has introduced in evidence the statement made by the defendant the morning after the homicide to the effect that he (the defendant) had to kill the deceased to save himself. You are instructed that the State is bound by this evidence, and unless you believe the State has proven by other evidence beyond a reasonable doubt that said statement is untrue you will find the defendant not guilty."

We think this complaint well founded but that the special charge set out was incorrect in that it placed the whole burden on *the State* to disprove the exculpatory statements. The correct rule is stated below. It appears to be in accordance with all the authorities that if in proving its case the State put before the jury statements of the accused which, if true, would entitle him to an acquittal, that there should be some direct and positive instruction given to the jury to that effect, and that it would not be sufficient in the face of an exception, to make the indefinite statement that the State would be bound by such exculpatory or mitigating statements. In other words, the right of the accused in such instance should be stated to the jury in plain and unmistakable language so that they may know that the defendant is entitled to an acquittal if such exculpatory statements be not disproved or shown to be false by other testimony.

In presenting the theory of self-defense, advanced and supported by appellant's testimony, the trial court instructed the jury as follows:

"Now if you believe from the evidence, that the defendant, P. F. Robidoux, by striking and beating Wellits Moore with a blunt instrument, did kill the said Wellits Moore, and you further believe from the evidence that at the time of such killing, if any, the said Wellits Moore did make a pass or demonstration with a stick of wood that induced the defendant to believe, viewed by you from the defendant's standpoint at the time, in the light of all the facts and circumstances in his, defendant's, knowledge, that he, the said Wellits Moore, was about to attack, the defendant, etc."

Exception was reserved to this as not properly defining the rights of the defendant, and as not instructing the jury that they must view all the facts and circumstances surrounding the killing from the standpoint of the defendant, and that he has the right to act upon the appearances of danger as viewed from his standpoint. We are of opinion that the charge quoted making the right of appellant to act in self-defense depend upon whether Wellits Moore "did make a pass or demonstration with a stick of wood," was too restrictive. Whether Moore made a pass or demonstration with a stick of wood or not, if it reasonably appeared to appellant when viewed from his standpoint that Moore was about to make an attack upon him with a stick of wood, or any other weapon which from its kind and the manner of its use caused appellant to believe himself to be in danger of death or injury, he would have the right to act upon the appearance of danger whether in fact such danger was real or only apparent. As we read the testimony of appellant, he said that Moore was advancing toward him with a stick of wood elevated in a striking position, and that believing Moore was about to attack him he struck him rapid blows with the gun barrel.

Regardless of whether Moore "made a pass," or what might be called a demonstration, still if, as viewed from the standpoint of the defendant at the time, the acts and conduct of Wellits Moore were such as to cause in defendant's mind a reasonable fear or apprehension of death or serious bodily injury, he would have the right to act and take such steps as were reasonably necessary to protect himself.

We have considered this case carefully, and confess ourselves to have some doubt as to the sufficiency of the testimony to support a conviction of murder. The parties were strangers to each other. The two brothers were guests in appellant's little house on the island referred to. As the time passed they took various rounds of drinks, amounting to some three or four. According to the testimony of appellant, which is contradicted by no witness, a controversy arose between the two brothers, and his entrance into the ensuing difficulty was for the sole purpose of preventing injury by one of them to the other. If his statement be true, he was immediately and seriously attacked by James Moore, and from that time until both of the Moores were killed there seemed little or no cessation in the movement of the tragic affair. Appellant was a much smaller man than either of the others, and also a man nearly sixty years of age. Both the two men killed were young, strong, healthy men, and in a

struggle between appellant and either of them the chances would appear almost wholly on their side. It is a tragedy for any man to be killed by another, and of course a much greater and more unusual thing for two men to be killed by one other. A trial involving a situation of this kind should be conducted with great care for the rights of the man of the character proved for this appellant who claims himself to be the victim of unfortunate circumstances, causing him to bring about the death of two other men. We think it error also to allow the State to prove, over objection, that appellant had been charged with a violation of "The fish" laws.

For the errors mention, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*