Clint B. WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–82–042–CR.

Court of Appeals of Texas, Austin.

Nov. 17, 1982.

Isaac E. Henderson, Henderson, Wiggins & Adams, Houston, for appellant.

Ronald Earle, Dist. Atty., Rosemary Lehmberg, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, POWERS and GAMMAGE, JJ.

POWERS, Justice.

Appellant, Clint B. Williams, appeals his conviction for the offense of murder in the course of a robbery, for which offense he was sentenced to a term of imprisonment not less than five years nor more than sixty years. Tex.Pen.Code Ann. §§ 19.02(a)(3), 29.01, 29.02 (1974). We will affirm the trial court's judgment.

■ Appellant's first ground of error contends the jury's verdict of guilty rests solely upon circumstantial evidence which raises no more than a strong suspicion or a mere probability that appellant committed the offense, and does not exclude every other reasonable and exculpatory hypothesis which may be drawn from the evidence. *Moore v. State*, 532 S.W.2d 333, 336–37 (Tex.Cr.App.1976).

We disagree.

The evidence shows the victim to have been a homosexual who lived in Austin, Texas. A witness called by the State identified appellant as the same individual which the witness had seen sitting with the victim in his automobile outside a bar in Austin, on February 15, 1980. The bar was shown to have been a customary meeting place for homosexuals. The victim's body was found February 19, 1980 in Austin. A medical examiner testified the victim died between February 15 and February 18, 1980, inclusive, the precise day of his death being unknown.

Other evidence shows appellant to have been arrested in New Orleans, Louisiana on February 27, 1980, following a police chase at high speed, an attempt by appellant to run down the police officers with the automobile he was driving, and appellant's arrest being effectuated only after police officers shot him and blocked his escape. Appellant was driving the victim's automobile when arrested. As he emerged from the automobile, he was informed by the officers that he was being arrested for the theft of a murder victim's automobile in Austin, Texas. Appellant replied: "I ain't killed nobody. We were just trying to make a hustle." Or, according to another of the arresting officers, appellant replied: "Man, we didn't kill that man. I didn't mean to kill him. That man isn't dead. All I was doing was making a hustle." Incident to appellant's arrest, a wallet was taken from him. It contained the victim's identification card.

Concurrent with his arrest appellant was asked: "[W]ho were the fellows that he was with in Austin?" Appellant replied: "Gilbert." He then said Gilbert was at the house appellant had left at the commencement of the police chase, located on Dupre Street in New Orleans. When New Orleans officers arrested Gilbert Smith at the house, a short time later, they found the victim's briefcase on a bed beside which Smith was crouching. The briefcase contained the victim's papers, wristwatch, and ring, and a pawnbroker's receipt signed by appellant, shown by other evidence to have been given in exchange for an article belonging to the victim.

We hold that a rational jury could, from the cumulative effect of the foregoing and other evidence contained in the record, find appellant guilty beyond a reasonable doubt. *Plunkett v. State*, 580 S.W.2d 815, 821 (Tex. Cr.App.1978).

Appellant next assigns error in the trial court's failure to instruct the jury that they were required to acquit appellant unless the State disproved an exculpatory statement

which was shown by the State's evidence to have been made by appellant.

In appellant's brief, he urges the following general rules: when the State introduces in evidence an accused's admission or confession, the State is bound by any part thereof which tends to exculpate or exonerate the accused, unless the State disproves the exculpatory statement by other evidence. *Palafox v. State,* 608 S.W.2d 177 (Tex.Cr.App.1979); *Simon v. State,* 488 S.W.2d 439 (Tex.Cr.App.1973); *Davis v. State,* 474 S.W.2d 466 (Tex.Cr.App.1972). Moreover, in such circumstances, the accused is entitled to a jury instruction that he should be acquitted unless his exculpatory statement is by other evidence disproved or shown to be false. *Davis v. State, supra., Robidoux v. State,* 34 S.W.2d 863 (Tex.Cr. App.1931). The State, in reply, refers to a qualification of these rules, established in *Simon v. State, supra.:* the accused is not entitled to the instruction unless his exculpatory statement is made in connection with his admitting the acts which constitute the offense for which he is on trial. In other words, if the State introduces statements made by the accused which are, in effect, solely exculpatory, the State is not bound thereby and the instruction referred to above would be incorrect. *Palafox v. State, supra.; Dixon v. State,* 128 Tex.Cr.R. 94, 83 S.W.2d 328 (1935). We are therefore required to apply these general rules to the particular circumstances of the present case. Before doing so, however, we will determine whether appellant has preserved his claim of error in this regard.

■ Appellant's objection to the trial court's charge reads as follows: "The defendant objects to the court's charge because it fails to include a charge on the so-called 'exculpatory evidence' rule of law." The record of trial does not reflect that this objection was in any respect clarified or made more specific by oral explanation at the time the objection was submitted.

We hold the objection insufficiently specific to preserve appellant's ground of error. The objection does not, for example, point out whether the phrase "exculpatory evidence" refers to documentary or testimonial evidence, nor does it indicate the tenor of the evidence or otherwise identify it so that the trial judge could evaluate appellant's contention that it is "exculpatory." The rule discussed in *Palafox, Simon,* and *Davis* is only an application of the general rule that a party is bound to the truth of evidence which he introduces; for example, the State is bound by the testimony of third parties when the State offers their testimony and certain parts of their statements tend to exonerate the accused. *Menefee v. State,* 67 Tex.Cr.R. 201, 149 S.W. 138 (1912). And if we assume appellant's objection could refer only to his own statements, introduced by the State, the objection does not hint at which of his several statements amount to an admission, coupled with a statement absolving him of the crime for which he was on trial. Such a vague and casual reference to the totality of the evidence introduced in a five-day trial did not distinctly specify appellant's objection so as to enable the trial judge to intelligently evaluate and determine the issue. Tex. Code Cr.P.Ann. art. 36.14 (Supp.1981). The objection was therefore insufficient to preserve any error for appellate review. *Wood v. State,* 516 S.W.2d 667 (Tex.Cr.App.1975); compare *Simon v. State, supra.,* where the objection, referring to "exculpatory statements," was held sufficiently specific in circumstances where the evidence contained only one statement made by the accused.

■ Irrespective of whether appellant's claim of error was preserved for appellate review, the instruction for which he contends would have been incorrect had it been contained in the trial court's charge to the jury. We are informed in appellant's brief that his claim of "exculpatory evidence" rests upon the following statements which he made to the arresting officers, according to their testimony adduced by the State: "I ain't killed nobody. We were just trying to make a hustle. I didn't mean to kill him." Appellant did not testify at trial.

The statements attributed to appellant do not contain an admission by him that he

committed the "acts which normally constitute the offense alleged in the indictment." *Palafox v. State, supra.,* 608 S.W.2d at 182. "To invoke the rule, ... it must first be established that the accused admitted *doing the acts which would ordinarily constitute the gravamen of the offense." Id.* (emphasis supplied). In *Palafox,* those acts were ascertained by reference to the capital murder statute, Tex.Pen.Code Ann. § 19.-03(a)(2) (1974). That statute authorizes the death penalty for the offense of intentional murder in the course of committing one of several other enumerated felonies, "robbery" being the felony alleged in *Palafox.* In that case, the State introduced evidence, apart from the accused's confession, that the victim had been killed in his home, from which property belonging to the victim had been taken, the property being of a kind typically taken in a residential burglary. The accused, in a lengthy written confession, admitted performing the acts from which one may normally draw the crucial inference that the victim was killed *in the course of a robbery,* namely an intentional killing of the victim and an unlawful taking of his property. While admitting such acts, however, the accused explained in his confession that he killed the victim *before* deciding to take his property, stating that he only took the property to create the appearance of burglary, which fact did not, of course, diminish the unlawfulness of the taking. The accused's explanation did not deny either of the minimal *acts* essential to constitute the offense alleged in the indictment: (1) an intentional homicide and (2) an unlawful taking of the victim's property.[1] Rather, his explanation admitted and presumed these acts but *denied* the crucial inference which one would otherwise be permitted to draw from them, namely that the unlawful taking formed the occasion and the context for the murder. 608 S.W.2d at 182.

Appellant stands indicted for a crime which is similar to that for which Palafox was indicted, that is, murder in the course of a robbery.[2] The occasion and context of

1. The Court in *Palafox* states as follows at 608 S.W.2d at 182:

 In the case before us, the appellant admitted in his confession that he killed Paul Box and that he took the items stolen from Box's home. He therefore satisfied the first requirement of the rule by admitting acts which would normally constitute the offense alleged in the indictment.

2. The indictment alleges that on or about February 16, 1980, in Travis County, Texas, appellant:

 did then and there commit the felony offense of Robbery, to-wit: the said Clint B. Williams did then and there while in the course of committing theft and with intent to obtain and maintain control of property of Harvey King, Jr., to-wit: an automobile, without the effective consent of Harvey King, Jr. and with intent to deprive Harvey King, Jr. of said property, did then and there intentionally and knowingly threaten and place Harvey King, Jr. in fear of imminent bodily injury; and while in the course of and in furtherance of the commission of said offense, the said Clint B. Williams did then and there commit an act clearly dangerous to human life, to-wit: the said Clint B. Williams did then and there suffocate the said Harvey King, Jr. with an handkerchief and a necktie and did thereby cause the death of Harvey King, Jr., against the peace and dignity of the State.

 In the present case the indictment invoked the provisions of Tex.Pen.Code Ann. § 19.02(a)(3) (1974), defining the offense of murder to include a homicide which results from an act, clearly dangerous to human life, committed in the course of a felony other than voluntary or involuntary manslaughter. The felony relied upon in the indictment is "robbery," defined in Tex.Pen.Code Ann. § 29.02(a)(2) (1974) to include the commission of a "theft," accompanied by an act which "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." The "theft" necessary to a robbery is defined as follows in Tex.Pen.Code Ann. § 31.03(a), (b) (Supp.1981):

 (a) A person commits an offense if unlawfully appropriates property with intent to deprive the owner of property.
 (b) Appropriation of property is unlawful if:
 (1) it is without the owner's effective consent; or
 (2) the property is stolen and the actor appropriates the property knowing it was stolen by another.

 Following the analogy in *Palafox v. State, supra.,* a synthesis of the foregoing provisions would make the minimum acts, essential to the "gravamen of the offense" alleged in the indictment, (1) a homicide resulting from an act clearly dangerous to human life (2) committed in the course of an unlawful taking of property. As in *Palafox,* one may infer from an unlawful homicide and an unlawful taking of property,

the homicide remain the same—a "robbery." On the other hand, whether the homicide was intentional or not is immaterial in the present case. Rather than depending upon a specific intent, the homicide required to be shown under the present indictment is one which results from an act, clearly dangerous to human life, committed in the course of a robbery.

Appellant's ground of error rests upon the statements "I didn't mean to kill him" and "We were just trying to make a hustle," words attributed to appellant by the arresting officers. His other statements are immaterial to our resolution of the ground of error. To sustain the ground, we must infer from the relevant statements appellant's admission of a robbery, in the course of which he committed an act clearly dangerous to human life, causing the death of the victim.

One may, perhaps, logically infer from the statement "I didn't mean to kill him" that appellant admits personally killing the victim, although the statement obviously permits an equally reasonable inference, to the effect that the homicide was committed by someone else, a result of the "hustle" not personally contemplated by appellant as a likely thing to happen. We will assume for the purpose of discussion that the statement "I didn't mean to kill him" constitutes an acknowledgment by appellant that he committed an unlawful homicide.

However, none of appellant's words acknowledge the other act essential to form the "gravamen of the offense" alleged in the indictment—an unlawful taking of the victim's automobile. Appellant invites our attention to his statement "We were only trying to make a hustle." He contends the word "hustle" implies two possible meanings: (1) that appellant obtained the victim's automobile in return for homosexual favors; or (2) that appellant obtained the automobile from a third person who had gotten it from the victim in return for homosexual favors. Either theory allows a

non-incriminatory explanation of appellant's possession of the victim's automobile in New Orleans and a consensual parting with possession by the victim. Both theories, however, are inconsistent with a "theft" of the victim's automobile, not because they deny an inference which might otherwise be made, to the effect that the taking occurred in the context of a robbery, as in *Palafox,* but because they expressly deny that the automobile was taken unlawfully. Thus, neither theory constitutes an admission within the rule of the *Palafox* case, even if one assumes that appellant's statements acknowledge committing an unlawful homicide. We overrule the ground of error for this reason as well.

 We may also be permitted to observe that whatever veiled or oblique insinuations may be attributed to appellant's use of the slang word "hustle," the very opaqueness, equivocalness, uncertainty, and ambiguity of the word preclude any conclusion that appellant's statement amounts to an admission of an act forming part of the "gravamen of the offense". The same may be said, to some extent, of the statement "I didn't mean to kill him." Appellant asks us to *infer* from his statements an acknowledgment of the acts constituting the "gravamen of the offense" alleged in the indictment under which he was tried. An inference in these circumstances is not an admission at all. For example, a trial court is obliged to instruct the jury relative to circumstantial evidence where there is no direct evidence showing the accused's commission of an offense. On the other hand, if the accused admits committing the acts which constitute the offense, the case is no longer one of circumstantial evidence alone and the instruction is not required, for the admission constitutes direct evidence. However, only an *unequivocal* admission of the crime will relieve the court from the duty of instructing the jury relative to circumstantial evidence. The instruction must be given when "it is only by a process of

that the former occurred "in the course of" the latter, provided an unlawful homicide and un-

lawful taking are first established.

inference that it can be determined that there is a confession or admission." *Thornton v. State,* 136 Tex.Cr.R. 560, 127 S.W.2d 197 (1939).

■ We hold the same rule applies relative to the jury instruction contended for by appellant in the present case: unless the accused *unequivocally* admits doing the acts which would ordinarily constitute the gravamen of the offense alleged in the indictment, he is not entitled to the instruction relative to exculpatory statements. Because appellant did not make such an admission, we overrule his ground of error for this additional reason.

■ In an additional ground of error, appellant complains of the trial court's instructing the jury relative to the law of criminal responsibility when more than one person participates in an offense.[3] Appellant contends the evidence was insufficient to support the trial court's instruction. We disagree. The evidence shows Gilbert Smith to have been arrested in the manner described above, following appellant's own statement that Smith was a participant in the transaction with the victim; and appellant's directing the arresting officers to the house where Smith was found with the victim's briefcase, papers, and articles of personal property mentioned above, and the pawnbroker's receipt signed by appellant. We overrule the ground of error.

■ Appellant complains that the trial court erred in refusing to allow the introduction of many photographs, taken in the victim's home, showing nude young men. The relevance of the photographs is said by appellant to be that they establish a motive in persons other than appellant to kill the victim, in that he possessed these and similar photographs showing individuals engaged in homosexual acts. The trial court excluded the photographs because appellant failed to establish the necessary "predicate" for their admission. Evidence which tends to show the existence of a motive in a third

person to commit the crime with which an accused is charged is inadmissible if there is no other evidence which links the third person with the commission of the crime. "Some testimony must be offered showing opportunity on the part of such third person, and testimony tending to show that such party may have committed the offense. [citations omitted]" *Porch v. State,* 50 Tex.Cr.R. 335, 99 S.W. 102 (1906). We find no such evidence in the present case. Assuming the photographs would tend to create in the persons pictured a motive to kill the victim, appellant offered no evidence showing an opportunity on their part to do so and no evidence showing that they may have done so. Such was required to make the photographs admissible. The ground is overruled.

We have considered appellant's remaining grounds of error. Finding them to be without merit and not requiring discussion, we overrule them. The judgment of the trial court is affirmed.

---

3. Appellant does not complain of the form of the instruction. It generally recites the principles of law surrounding an accused's criminal responsibility for the act of another and the joint responsibility when two or more persons act together in the commission of an offense. See generally, Tex.Pen.Code Ann. §§ 7.01–7.03 (1974).